(No. 32452.—

In re Estate of Stanley Young.—(Metropolitan Trust Company, Appellee, *vs.* Ruth Young, Appellant.)

*Opinion filed March 23, 1953—Rehearing denied May 18, 1953.*

Henry I. Green, of Urbana, and Walter T. Gunn, of Danville, (Healy & Stickler, of Chicago, of counsel,) for appellant.

Nash, Ahern & McNally, of Chicago, (Martin J. McNally, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

An order of the probate court of Cook County entered January 29, 1951, vacated two earlier orders of that court relating to the appointment and discharge of an administrator *de bonis non* in the estate of Stanley Young and to the closing of that estate. On appeal, the circuit court of Cook County vacated the order of the probate court. The Appellate Court for the First District reversed the judgment of the circuit court and remanded the cause. (346 Ill. App. 257.) We allowed leave to appeal.

Upon the death of Stanley Young in 1940, letters of administration were issued to his widow, Ruth Young, herein referred to as the respondent. She administered the estate until June 23, 1944, when she was permitted to resign as administrator because she had become a nonresident. At her suggestion the probate court appointed the Metropolitan Trust Company, herein referred to as the petitioner, as administrator *de bonis non*. The petitioner continued the administration of the estate and on May 8, 1947, presented its "Final Account" in which it requested to be discharged as administrator.

When Halbert O. Crews, an attorney for the petitioner, presented the final account to an assistant to the judge of the probate court on May 8, 1947, Emmet J. Cleary, an attorney, protested the entry of an order discharging the Metropolitan Trust Company as administrator and closing the estate. At that time Cleary was attorney for the plaintiff in litigation pending in the United States District Court in which it was sought to obtain for Stanley Young's estate his interest in the estate of his grandfather, Otto Young. Cleary and Crews agreed that the administrator should not be discharged and that the estate should remain open. They made no change in the account and left the courtroom believing that the administrator had not been discharged or the estate closed.

Frederick B. Resag, assistant to the judge of the probate court, entered the following order on May 8, 1947: "Notice to Counsel for Heirs. Notice to Creditors. All 1st, 3rd & 4th Class Claims paid in full. Prorata Share of 7th Class Claims Paid. Estate exhausted as to time of filing this Final Account upon payment Cost of Administration, Widow's Award & Claims as set forth above. Costs Paid to Date. Final Account approved." This order, written by the assistant to the judge on the final account, neither discharged the administrator nor closed the estate.

Under the procedure followed in the probate court, an account is filed in the courtroom of the assistant to the judge of the probate court who approves current and final accounts. The assistant endorses on the account a memorandum of his findings and order. When this is done, the account goes into the office of the clerk of the probate court, where it is kept for about a week. The account and the endorsements are then photostatted. The photostats are kept in book form, numbered, and marked "Deceased Final Accounts and Orders in the Probate Court of Cook County." These books are permanent records of the probate court. The original account is kept in the files of the estate. When the assistant to the judge makes his order, the deputy clerk in his courtroom makes a minute of that order. This minute is then entered in the clerk's docket at night. The docket is, of course, a permanent record, but the original minute of the deputy clerk is retained only for about five months.

The order quoted above was photostatted in the usual course, and so appears in the permanent records of the court. The clerk's minute entry of that order, however, as it appears in the docket, while substantially a copy of the order, adds the following: "Adm W W A Disch." At some unspecified date, after the order which was entered had been photostatted, the assistant to the judge added to his order as it appeared on the original copy of the final account, the notation "Adm W W A Disch."

On October 5, 1949, pursuant to notice to the parties of record, an order was entered substituting the firm of Finn, Tollkuehn and Smith as attorneys for the trust company as administrator *de bonis non,* and directing that notice of all proceedings be given to those attorneys.

The discrepancy between the entry in the clerk's docket and the entry, as modified, on the original of the final account on the one hand, and the order originally entered as shown by the photostat in the book of permanent records on the other, presented no difficulty until March of 1950. Then Cleary learned that the estate was not open, but, on the contrary, that both the docket entry and the final account endorsement specified that the estate was closed. In the meantime, the action instituted in the United States District Court had been successfuly concluded, and a decree had been entered holding that Stanley Young had a vested and transmissible interest in the remainder created by his grandfather's will. That interest is substantial, and may amount to $3,000,000. On appeal the Court of Appeals affirmed the decree of the District Court; *certiorari* was denied by the United States Supreme Court on June 5, 1950.

On March 20, 1950, as a result of Cleary's activity in disclosing the discrepancy in the records, the probate court entered an order which recited: "On the Court's own motion, it having come to the Court's attention from the record and file in this cause that due to misprision, certain doubt, confusion and ambiguity exists as to the present status of this Estate, the order of the Court entered May 8, 1947, is hereby expanded and amplified." Then, after stating the notice to heirs and creditors, payment of claims, and exhaustion of estate as to time of filing the account, stated in the original memorandum on the final account, the order continued: "It Is Hereby Ordered, Adjudged and Decreed, nunc pro tunc as of May 8, 1947, upon good and sufficient memorials including the order heretofore, on May 8, 1947, entered in this cause: That the final account . . . is hereby

approved and confirmed; that Metropolitan . . . is hereby discharged as the Administrator De Bonis Non; and the Estate of Stanley Young, Deceased, is hereby closed."

On June 6, 1950, the day after *certiorari* had been denied in the Otto Young will litigation, respondent, represented by Cleary's law firm, filed in the probate court a petition seeking the reopening of the estate of Stanley Young and the issuance to her of letters of administration *de bonis non*. Her petition was granted by the probate court on June 8, 1950. Thereafter, on June 29, 1950, petitioner filed its petition, asking that the orders of March 20, 1950, and June 8, 1950, be vacated and that the court find and declare that petitioner was and always had been the duly appointed and qualified administrator of the estate. After respondent's answer and petitioner's reply had been filed, a hearing on the petition was conducted by the judge of the probate court.

At the hearing, Cleary, who appeared as a witness for respondent, testified that he had been informed by respondent of the discrepancy between the memorandum on the original of the final account and the photostatic record of that account; that after being so advised he made a check of the probate court records and noted that something had been added; that he ordered a certified copy of the final account; that the next day, March 16, 1950, Resag, the assistant to the probate judge, called him on the telephone and asked to see him; that he went to Resag's courtroom where the discrepancy in the orders was discussed; that Resag, after talking with Crews on the telephone, pointed out to Cleary that Cleary was the only one who had objected to the discharge of the administrator; that he, Cleary, acknowledged this and then stated, "I withdraw my objections;" that Resag told him to prepare a *nunc pro tunc* order; that later he returned to Resag's office when Ambrose Finn, an associate of the firm which had been substituted as attorneys for the trust company on October 5,

1949, was present; that Resag then asked Cleary and Finn to get together on some kind of an order which could be entered; that on Monday, March 20, he took a *nunc pro tunc* order to Resag, who entered it and asked him to send a copy of the order to Crews; that he mailed a copy to Crews, as requested; that he served no notice of the application for the order on Finn or anyone else.

On the other hand, Crews testified that he had no knowledge or notice of the order of March 20 and that he had not seen a copy of it until the present action was instituted. Finn denied that he talked with Cleary in Resag's courtroom. He testified that he went to Resag at the latter's request; that he was informed by Resag of the inconsistency in the orders; that he told Resag that he was not present when the final account was filed; that he suggested Resag call Crews; that he left the courtroom with the understanding that he would be called in the event of any further action on this matter; that he did not receive any notice of the *nunc pro tunc* order and first learned about it from the president of the Metropolitan Trust Company about sixty days later.

Resag testified that he had been an assistant to the judge of the probate court for only one week prior to his approval of the account in this case; that he had no independent recollection of the estate of Stanley Young prior to March of 1950; that he did not know when he added the notation "Adm W W A Disch" to the original order but he was sure he added it at a date later than the date of its original entry; that in his opinion the approval of a final account without the actual discharge of the administrator is not a proper order; that he believed someone, perhaps some person in the clerk's office, had called his attention to the discrepancy; that when so informed he added the notation; that he believed the final account in Record Book 1325 of Final Accounts reflects the condition of the last page of the final account at the time he wrote on it on May

8, 1947; that in entering the *nunc pro tunc* order of March 20, 1950, he had no written memorials before him other than the final account; that not earlier than March 15, 1950, Cleary showed him the photostat he had ordered and the original of the final account and he saw the difference; that he told Finn and Cleary to get together, otherwise he would entertain a motion to go into the question; that Cleary, in handing over the order of March 20, 1950, had replied, "Yes," when he asked if the parties had agreed upon the presented order; that he signed the order, and that no notice of the entry of that order was given so far as he knew.

The probate court, after noting that the issues presented by the petition could be decided without any reference to the oral testimony that had been given by the witnesses on the hearing, since the records of the court showed that the notation of discharge was placed on the final account after May 8, 1947, without notice to the attorneys of record for the estate, decreed that the notation was a nullity which should be expunged from the records of the court, and that the order of March 20, 1950, having been entered without notice to the parties, should be vacated, and that the order of June 8, 1950, appointing Ruth Young as administrator *de bonis non* was consequently void and should be vacated. On appeal to the circuit court, the parties stipulated that the case be heard on the transcript of proceedings in the probate court. The circuit court found that the petitioner had full notice and knowledge of its final account and discharge of May 8, 1947, and of the *nunc pro tunc* order entered on March 20, 1950. The court therefore set aside the order of the probate court and confirmed the appointment of Ruth Young as administrator *de bonis non.* The Appellate Court, finding that the *nunc pro tunc* order was entered without notice, reversed the judgment of the circuit court and remanded the cause, with directions to vacate the orders of March 20, 1950, and June 8, 1950.

Our first inquiry necessarily concerns the initial order rendered by the assistant to the judge of the probate court, *i.e.,* the order of May 8, 1947. Respondent charges that the Appellate Court dealt wholly with the *nunc pro tunc* order entered on March 20, 1950, and ignored the effect of the order entered on May 8, 1947. In view of the conclusive and uncontradicted evidence bearing upon the effect of the order approving the final account filed by petitioner, respondent's attack is totally unwarranted. Respondent's own witness, Cleary, as well as every other interested party, agreed that it was understood the Metropolitan Trust Company was not to be discharged as of May 8, 1947. And apart from the oral testimony before the probate court, the official records of that court establish the fact that the petitioner was not discharged as administrator *de bonis non* as of May 8, 1947.

Respondent insists, however, that the May 8, 1947, docket entry of the clerk is conclusive proof that the Metropolitan Trust Company was discharged as of that date; that the clerk's entry, as the official record of the order made, cannot be collaterally attacked, either by oral testimony or by the photostat kept in the permanent records of the probate court showing the actual memorandum written upon the original of the final account by the assistant to the judge whose order is questioned. The mere statement of that position impels the conclusion that it is not sound. It is well established that the rendition of a judgment is the judicial act performed by the court at the time it makes its pronouncement and that the entry of the judgment on the record is simply a ministerial act performed by the clerk. (*People ex rel. Waite* v. *Bristow,* 391 Ill. 101; *Smyth* v. *Fargo,* 307 Ill. 300; *Moore* v. *Shook,* 276 Ill. 47.) Moreover, it has several times been pointed out that the judgment rendered by the court does not depend upon the action or inaction of the clerk; the judgment written up by the clerk must conform to the judgment pronounced by

the court. (*People ex rel. Waite* v. *Bristow,* 391 Ill. 101; *Moore* v. *Shook,* 276 Ill. 47; *Cosgrove* v. *Highway Commissioner,* 281 Ill. App. 406.) Any other rule would permit the clerk to exercise a judicial function beyond his normal ministerial activity.

As a natural development of these fundamental principles, this court has recognized the inherent power of the court to correct the clerk's records so that they correctly reflect the actual judgment rendered by the court, when the judge has a definite and certain record as a basis for the amendment. (*Freeport Motor Casualty Co.* v. *Tharp,* 406 Ill. 295; *People ex rel. Wonogas* v. *Holmes,* 312 Ill. 284; *West Chicago Park Comrs.* v. *Boal,* 232 Ill. 248.) The rule is succinctly stated in *Moore* v. *Shook,* 276 Ill. 47, 53: "The court may, even after the expiration of the term at which a judgment was rendered, correct or amend the entry thereof so as to make it conform to the judgment which the court actually rendered. (17 Am. & Eng. Ency. of Law, 2d ed., 818.) This court has held that the trial court at a subsequent term may from its minutes amend and enter an order *nunc pro tunc* to correct a judgment so that it will show the real judgment in fact rendered. (*People* v. *Quick,* 92 Ill. 580.) The judge's minutes on his docket have always been held by this court sufficient to authorize an entry of a judgment *nunc pro tunc* at a subsequent term. (*Metzger* v. *Morley,* 184 Ill. 81; see, also, *McDonald* v. *Patterson & Co.* 190 Ill. 121; *Tosetti Brewing Co.* v. *Koehler,* 200 id. 369; *Chicago, Burlington and Quincy Railroad Co.* v. *Wingler,* 165 id. 634; *Tynan* v. *Weinhard,* 153 id. 598; *Hogue* v. *Corbit,* 156 id. 540.)"

The probate court, upon notice to all parties of record and after a full hearing, entered a proper order on January 29, 1951, expunging the notation of discharge from the clerk's docket. The correction effected was based upon the contents of an official court document kept by the probate court in its permanent book of records. That circumstance

is to be distinguished from a collateral attack based upon parol or other evidence extrinsic to the official court records. The photostat, showing the original order rendered as it was written upon the original of the final account by the assistant to the probate judge on May 8, 1947, is a sufficient, definite, and certain basis for expunging the notation from the records and for finding that the petitioner was ' and had been since its appointment the administrator of the estate of Stanley Young.

Neither the addition of the notation of a discharge upon the final account subsequent to May 8, 1947, nor the entry of the *nunc pro tunc* order of March 20, 1950, can be deemed effective to discharge the petitioner as administrator. It is idle to say that the original order authorized the addition of the notation or the *nunc pro tunc* order of discharge, for both operated to enlarge the order of May 8, 1947, and must be treated as amendments to the original judgment rendered. Since it is clear that both amendments were made without notice, they are void and of no effect. (*Michael* v. *City of Mattoon*, 172 Ill. 394; *Swift* v. *Allen*, 55 Ill. 303.) Rule 60 of the probate court provides that "Except when a motion or claim is called for hearing on the Contested Calendar or the Claim Calendar, no motion will be heard or order entered without notice to the following: (1) to the executor, administrator, conservator or guardian; (2) to the party respondent to the motion * * *." The rule has the force of a statute and is binding upon the parties, as well as the court. (*North Avenue Building & Loan Assn.* v. *Huber*, 286 Ill. 375.) The success of a collateral attack upon a judgment generally depends on a record showing lack of jurisdiction; (*Parsons* v. *Lurie*, 400 Ill. 498; *Cullen* v. *Stevens*, 389 Ill. 35;) an attack charging want of notice and opportunity to be heard, however, may be based on evidence *dehors* the record. (*Steffens* v. *Steffens*, 408 Ill. 150; *Caswell* v. *Caswell*, 120 Ill. 377.) The oral testimony here establishing the fact

that the Metropolitan Trust Company had no notice of the addition of the notation or of the *nunc pro tunc* order was competent.

In an alternative contention, respondent argues that no notice of the entry of the *nunc pro tunc* order was necessary because it was made "on the court's own motion" and rule 67 of the rules of the probate court provides that the court may "by order entered ex parte, enlarge or reduce the time of notice prescribed by general rule or waive the service of notice" in any proceeding. It is sufficient to point out that the record before us indicates no action by the court purporting to waive the notice required by rule 60 with respect to the entry of the *nunc pro tunc* order. Respondent also urges that the requirement of notice was waived by an agreement between the attorneys of record that the discrepancy should be cleared up by a *nunc pro tunc* order. The Appellate Court correctly pointed out the complete failure of proof tending to show such an agreement or its provisions.

Respondent contends that the actions of the petitioner evidence a total want of equity in its position here. Petitioner is attacked for requesting discharge by its petition seeking approval of its final account and for attempting to assert its continuity of administration during a period in which it is currently removing itself from the trust business. The fact remains, however, that the amendment of petitioner's charter, effected in January, 1950, permits it to carry on its trust business "to the extent reasonably necessary for the purpose of accomplishing the orderly liquidation of the trust business presently conducted by the Corporation." Clearly, the petitioner is not disqualified from continuing in its capacity as administrator *de bonis non* from its appointment as such in 1944. Moreover, no good reason exists for holding that the petitioner was not entitled to rely upon the original judgment rendered on May 8, 1947.

Inasmuch as the order of June 8, 1950, appointing Ruth Young as administrator *de bonis non,* was dependent upon the purported discharge of the Metropolitan Trust Company and also was entered without notice to petitioner, that order is also void.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*