JULIUS GRONER, Plaintiff-Appellant and Counterdefendant-Appellant, v. REGENCY FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant-Appellee and Counterplaintiff-Appellee.

First District (1st Division)   No. 1—91—4011

Opinion filed June 14, 1993.

Edward H. Norton, of Highland Park, for appellant.

Rock, Fusco, Reynolds & Garvey, Ltd., of Chicago (Kevin W. Horan, of counsel), for appellee Regency Savings Bank.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff Julius Groner appeals from a final judgment of the circuit court of Cook County entered against him on his complaint for rescission of a promissory note and in favor of defendant Regency Federal Savings & Loan Association on its counterclaim for judgment on the same note. Plaintiff requests this court to vacate the judgment and to

remand for a new trial based on numerous evidentiary rulings which prejudiced his ability to prove his case. We affirm.

On March 21, 1989, plaintiff sued defendant for rescission of a promissory note and restitution of all amounts which he had paid. Dated September 28, 1986, the note was payable in installments to the order of Rothchild Realty Partners 130.14 Limited Partnership (Rothchild). The note bore the following indorsement:

"PAY TO THE ORDER OF
WITHOUT RECOURSE
ROTHCHILD REALTY PARTNERS 130.14
BY: TRU MANAGEMENT CORP., GENERAL PARTNER
BY: L[.] STOE V.P."

On December 15, 1987, plaintiff received a letter from defendant which advised him that Rothchild had defaulted on obligations owed defendant; that defendant was the holder of plaintiff's note; and that plaintiff should make future payments to defendant. Plaintiff made payments to defendant as requested until he filed the instant action.

To support the relief claimed, plaintiff alleged that defendant was not a "holder in due course" as that term is defined under article 3 of the Uniform Commercial Code (the Code) (Ill. Rev. Stat. 1989, ch. 26, par. 3—101 *et seq.*) and, thus, took the note subject to plaintiff's claim that the instrument was procured through fraud, of which defendant knew or should have known. Plaintiff's fraud allegations were more particularized in a 160-page lawsuit filed February 1988, in a New York Federal court. Plaintiff attached the complaint in that action as an exhibit to his complaint. Plaintiff is named therein as a plaintiff; however, defendant is not a named party.

To further support his allegation that defendant was not a holder in due course, plaintiff asserted that defendant did not take the note "for value"; took the note despite facial irregularities appearing thereon, namely, that the payee (Rothchild) had indorsed it "in blank" and "without recourse"; and took the note as part of a bulk transaction (see Ill. Rev. Stat. 1989, ch. 26, par. 3—302).

Defendant counterclaimed and asserted its status as owner and holder of the note, plaintiff's default thereunder and defendant's right to accelerate the note upon default. Defendant sought judgment on the note, attorney fees and court costs. Plaintiff's answer to defendant's counterclaim admitted that defendant was the owner and holder of the note.

At trial, plaintiff called one witness: Frank L. Bogden, defendant's senior vice-president and head officer of defendant's real estate loan department. Bogden testified that on or about February 1986,

defendant made a loan for $2.6 million to Rothchild Reserve International Investments, Inc. (RRII). The loan was secured by a third mortgage on an office building in Denver, Colorado. However, defendant required additional collateral.

Accordingly, defendant entered into an agreement with RRII and another entity—American Realty Associates, a New York limited partnership (ARA)—wherein various notes would be given to defendant as additional collateral for the loan. From time to time, defendant allowed a substitution of other notes for the original notes. The first substitution occurred in May 1986. A second substitution occurred in October 1986. Plaintiff's note was one of the notes included in this second substitution. Each substitution occurred by way of written agreement between defendant, RRII and ARA. These agreements amended the initial collateral agreement.

Plaintiff attempted to ask Bogden questions concerning the May 1986 amendment. Defendant's relevancy objection was sustained. Plaintiff made no offer of proof. The court similarly sustained relevancy objections to questions concerning the original collateral assignment agreement and a February 11, 1986, opinion letter from a law firm to defendant. This letter discussed the collateral assignment. Plaintiff made no offer of proof. In general, the court found any questions concerning transactions which predated the execution of the note irrelevant to plaintiff's having to disprove defendant's holder in due course status.

Frustrated by the court's evidentiary rulings, plaintiff rested after offering into evidence (and the court receiving): (1) the original promissory note; (2) the October 1986 agreement allowing a second substitution of collateral; and (3) the June 5, 1989, affidavit of Frank Bogden. The court, however, denied admission of: (1) the original collateral assignment agreement; (2) the May 1986 substitution agreement; and (3) the February 1986 opinion letter.

Following the close of plaintiff's case, the circuit court entered judgment against plaintiff on his complaint. The court also entered judgment in favor of defendant on the balance of the note, plus interest, attorney fees and court costs.

Plaintiff's ability at trial to obtain rescission turned on proving grounds for rescission and that defendant was not a holder in due course. Our review of the record leads us to conclude that plaintiff's proof on either of these propositions is utterly lacking. In fact, the opposite appears true: defendant is indeed a holder in due course.

■ A holder in due course is a holder who takes the instrument for value, in good faith, and without notice of any defense against or

claim to it. (Ill. Rev. Stat. 1989, ch. 26, par. 3—302(1).) However, a holder does not become a holder in due course of an instrument by purchasing it as part of a bulk transaction not in the regular course of business of the transferor. Ill. Rev. Stat. 1989, ch. 26, par. 3—302(3)(c).

■ Here, plaintiff in his answer to defendant's counterclaim admitted that defendant was the owner and holder of his note. Thus, defendant is a holder for purposes of this action.

The record also shows that defendant took the note for value. Frank Bogden, defendant's senior vice-president and head officer of defendant's real estate loan department, testified that defendant made a loan for $2.6 million to RRII in February 1986. The loan was secured by a third mortgage on certain improved property and by certain notes given to defendant by ARA. Substitutions of notes occurred in May 1986 and later, in October 1986. Defendant received plaintiff's note as part of this latter substitution.

Section 3—303 of the Code states that a holder takes the instrument for value "when he takes the instrument in payment of or as *security for an antecedent claim* against any person." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 26, par. 3—303.) The transaction in question falls squarely within this section of the Code. Defendant thus took plaintiff's note for value.

Regarding the elements of good faith and notice, plaintiff introduced no evidence to contradict the reasonable inference from Bogden's testimony that defendant received plaintiff's note as part of an ordinary transaction between a bank and borrower. Plaintiff asserts on appeal that his ability to disprove these matters was unduly restricted by the circuit court's erroneous evidentiary rulings. Plaintiff's failure, however, to make *any* offer of proof *whatsoever* during the trial constitutes a waiver of any error on review:

> "Just as the objection is the key to saving for review any error in admitting evidence, the offer of proof is the key to saving error in excluding evidence. [Citation.] The purpose of the offer of proof is to disclose the nature of offered evidence to which objection is interposed, for the information of the trial judge and opposing counsel, and to enable the reviewing court to determine whether the exclusion was erroneous and harmful. [Citations.] When the circumstances and the question itself sufficiently indicate the purpose and substance of the evidence sought, and when the question is in proper form and clearly admits of a favorable answer, an offer is not required although clearly the safer course. [Citations.] When it is not clear what

the witness would say, what is the basis for her so saying, and what the purpose of the evidence is, a detailed and specific offer of proof is required." M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.7 (5th ed. 1990).

We believe this is a case in which an offer of proof was necessary to preserve our ability to review the alleged improper exclusion of evidence. If defendant did not take plaintiff's note in good faith or with notice of the fact that plaintiff was somehow swindled, it was incumbent upon plaintiff to produce evidence of such facts. In the event plaintiff's attempts at trial were met with sustained objections, plaintiff should have proceeded by way of an offer of proof. Because plaintiff did not do so in this case, we can only speculate as to what the proffered evidence would be. We will not undertake such a course of conduct.

Similarly, plaintiff's failure to make an offer of proof on his bulk transaction theory bars any substantive review of that aspect of plaintiff's case. Moreover, to defeat defendant's holder in due course status under this theory, defendant must have "purchased" plaintiff's note as part of a bulk transaction. The record shows, however, that defendant's acquisition of plaintiff's note was not by "purchase" as required by section 3—302(3)(c). Rather, defendant took plaintiff's note as security for a loan. Plaintiff's bulk transaction theory accordingly fails.

Plaintiff also raises the argument that defendant took with notice of defenses to enforcement of the note because the note is "so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership." (Ill. Rev. Stat. 1989, ch. 26, par. 3—304(1)(a).) Plaintiff asserts in support the fact that the payee of his note indorsed it in blank and without recourse. However, the Code clearly allows an indorsement to be "in blank" (see Ill. Rev. Stat. 1989, ch. 26, par. 3—204(2)) and "without recourse" (see Ill. Rev. Stat. 1989, ch. 26, par. 3—414). Accordingly, these matters cannot serve as notice to defendant of any irregularity.

Another effect of plaintiff's failure to make any offer of proof at trial is that this court can only speculate as to the nature of "the fraud" committed upon plaintiff. Even if plaintiff could defeat defendant's holder in due course status, plaintiff, to obtain rescission, would have to prove grounds to support such relief. Plaintiff's complaint made reference to an action pending in Federal court in New York. However, at trial, no proof of fraud was introduced into evidence or

that defendant had knowledge of such fraud. Absent proof supporting rescission, such relief cannot be granted.

For the foregoing reasons, the circuit court properly entered judgment against plaintiff following the close of his case. We accordingly affirm that portion of the judgment on review.

■ We also believe the court properly awarded judgment in favor of defendant on its counterclaim. Under section 3—307 of the Code, "When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." Ill. Rev. Stat. 1989, ch. 26, par. 3—307(2).

Here, plaintiff's complaint admits his execution of the note in question and, as noted, plaintiff admits defendant's status as a holder and owner of the note. Thus, under the Code, defendant is entitled to enforce the note upon production unless plaintiff establishes a defense. The record reveals no defense. Plaintiff does not contest his default on the note and has not appealed the amount of the judgment entered against him. Accordingly, the judgment entered on defendant's counterclaim is affirmed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.