PREMIER ELECTRICAL CONSTRUCTION COMPANY, Plaintiff-Appellant and Cross-Appellee, v. AMERICAN NATIONAL BANK OF CHICAGO, as Trustee, *et al.*, Defendants-Appellees and Cross-Appellants.

First District (3rd Division)   Nos. 1—93—1210, 1—93—1211 cons.

Opinion filed September 29, 1995.—Modified opinion filed December 13, 1995.

818

Patrick Mazza & Associates, of Chicago (Patrick J. Mazza and Michael G. Swiatek, of counsel), for appellant.

Rosenblum, Vandenberg & Smith, of Chicago, and Smith, Pachter, McWhorter & D'Ambrosio, of Vienna, Virginia (Peter M. D'Ambrosio, Krista L. Peterson, Jonathan D. Shaffer, and Peter C. Herzog, of counsel), for appellees Morse/Diesel, Inc., and Federal Insurance Company.

JUSTICE CERDA delivered the opinion of the court:
This case arises from the renovation of the building at 666 North Lake Shore Drive in Chicago (project). On December 17, 1980, Morse/Diesel (MDI) entered into a general contract with 666 Associates to remodel and reconstruct the building. On January 13, 1981, MDI entered into a subcontract with Premier Electrical Construction Co. (Premier) for electrical work on the project. On February 6, 1981, Federal Insurance Company (Federal) issued a labor and material payment bond (Bond) for the project with Federal as surety, MDI as principal, and 666 Associates and others as obligees.

The project was financed through a series of mortgages totalling approximately $115 million, which were eventually assigned to Chemical Bank. Progress payments were made to Premier from a construction loan escrow account.

After MDI failed to pay Premier for all the work it had finished, Premier filed a mechanic's lien against 666 Associates and American National Bank (ANB), the land trustee, on June 13, 1983, for $626,280. MDI filed mechanic's liens totalling over $2.4 million against 666 Associates and ANB on April 26, 1984, and May 7, 1984. The amount owed to Premier was included in MDI's liens.

Premier filed a complaint on January 24, 1984, against MDI, ANB, Federal, and others. Premier's amended complaint included the following claims: (1) count I was a claim to foreclose its mechanic's lien under section 28 of the Mechanics Lien Act (Act) (770 ILCS 60/28 (West 1992)); (2) count II was a claim on the Bond against Federal as surety; (3) count III was a breach of contract claim against MDI as general contractor; (4) count IV was a claim for acceleration and delay damages against MDI; and (5) count V was a claim for vexatious delay against Federal under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1992)).

Subsequently, the project filed for bankruptcy. When the automatic stay was lifted in July 1985, Chemical Bank filed a mortgage foreclosure action. Chemical Bank obtained a judgment and decree of foreclosure on May 8, 1987, and later purchased the property at the foreclosure sale.

On March 1, 1988, Judge La Porta dismissed Premier's mechanic's lien claim against Chemical Bank and other subsequent owners for failure to strictly comply with the requirements of section 7. On November 30, 1988, Judge La Porta granted partial summary judgment in favor of Premier on count II, the claim on the Bond against Federal as surety, and count III, the breach of contract claim against MDI as general contractor, in the amount of $362,721.56. The court granted Premier statutory prejudgment interest from June 20, 1983, through entry of the judgment on November 23, 1988.

On March 2, 1989, MDI, Chemical Bank, and the title insurer entered into a settlement agreement providing in part that MDI would release all its mechanic's liens, including Premier's, in return for a payment of $750,000.

On December 30, 1991, Judge Romie Palmer entered summary judgment in favor of Premier and against MDI and 666 Associates on count I (foreclosure of mechanic's lien) for the amount of $362,721.56 plus interest from June 15, 1983, and costs. In addition, Judge Palmer imposed a constructive trust on the settlement proceeds that MDI had received from Chemical Bank.

Upon reconsideration, a successor judge (Judge Sheila Murphy) modified the amount ($362,721.56) awarded to Premier and lifted the constructive trust on March 3, 1993. She entered the amount of $169,895, which was Premier's *pro rata* share of the $750,000 settlement amount, plus interest.

On November 29, 1990, Judge Berman ruled in favor of MDI on count IV, which was the claim for acceleration and delay damages against MDI. Prior to a bench trial on count IV, the trial court granted MDI's motion that Premier's expert witnesses be excluded.

Following the trial, judgment was entered against Premier and in favor of MDI. The court found that Premier had failed to prove what, if any, damages it suffered as a result of delays because the damages placed in evidence were highly speculative. Furthermore, the trial court held that the evidence indicated that the delays were caused in part by Premier, thus negating Premier's claim that defendant was solely responsible for the delays.

On October 4, 1990, Judge Virgilio entered summary judgment in favor of Federal on count V, Premier's claim for vexatious delay of payment claim against Federal. The trial court relied on *Yassin v. Certified Grocers of Illinois, Inc.* (1990), 133 Ill. 2d 458, 551 N.E.2d 1319, to rule in favor of Federal on the basis that Premier had no standing to bring the section 155 claim.

On appeal, MDI asserts that the judgment on the mechanic's lien in Premier's favor was an error and Premier asserts that the amount of its *pro rata* award of $169,895 was improper.

Federal asserts that the trial court improperly entered judgment against Federal on count II (Bond claim). MDI asserts that the trial court improperly entered judgment against MDI on count III (breach of contract). Premier appeals the denial of the contract interest rate on both those judgments.

On count IV (claim for acceleration and delay damages), Premier asserts that the trial court erred by excluding its expert witnesses and that the judgment for MDI was against the manifest weight of the evidence.

Finally, Premier appeals the summary judgment in favor of Federal on count V (vexatious delay claim).

Without setting forth the substance of the voluminous pleadings, facts, and circumstances, we will make reference to those that bear on the issues as each specific contention is being considered. For the following reasons, we affirm.

The first issue on appeal is whether Chemical Bank can be held liable for Premier's mechanic's lien claim pursuant to section 28 of the Mechanics Lien Act (770 ILCS 60/28 (West 1992)) (Act) on the basis that it stepped into the shoes of the owner. Premier maintains that the $750,000 settlement Chemical Bank paid to MDI was money due from the owner under the original contract because the payment was exchanged for MDI's dismissal of its lien's claims against the original owner.

The trial court entered summary judgment in favor of Premier and against MDI for Premier's *pro rata* share of the $750,000 settlement money Chemical Bank paid to MDI. In its ruling, the trial court held that Chemical Bank, while not an owner under the Act, stepped into the shoes of the owners by purchasing title to the property at a foreclosure sale because the character of the money due and owing from the owner did not change. Furthermore, the trial court ruled that MDI had the authority to release Premier's claims without its consent since the subcontractor's right to a mechanic's lien is dependent on the contract between the owner and contractor. With no evidence of fraud or breach of a fiduciary relationship, the trial court lifted the constructive trust.

■ The purpose of the Mechanics Lien Act is to protect those who in good faith furnish labor or materials for construction of buildings or public improvements. (*Lawn Manor Savings & Loan Association v. Hukvari* (1979), 78 Ill. App. 3d 531, 532, 397 N.E.2d 247.) It balances the owner's benefit of its bargain with the subcontractor's right to be paid for the labor and materials he or she furnishes in good faith. (*Edward Hines Lumber Co. v. Dell Corp.* (1977), 49 Ill. App. 3d 873, 882, 364 N.E.2d 368.) The Act's technical and procedural require-

ments must be strictly construed because mechanic's liens are a statutory creation. (*Prior Oil Co. v. First Bank & Trust Co.* (1992), 231 Ill. App. 3d 331, 332, 596 N.E.2d 891.) Once the statutory requirements are met, however, the Act should be liberally construed to carry out its remedial purpose. *Delaney Electric Co. v. Schiessle* (1992), 235 Ill. App. 3d 258, 265, 601 N.E.2d 978.

■ In this case, Chemical Bank was a lender and then, later, a purchaser of the property. As such, Chemical Bank was a third party to both Premier's and MDI's mechanic's lien claims. Where the interests of third parties will be affected, a stricter construction of the Mechanics Liens Act will be adhered to than what is followed in cases arising between the mechanic and the original owner. Because Chemical Bank is a third party, we are required to strictly construe the Act. (*Steinberg v. Chicago Title & Trust Co.* (1986), 142 Ill. App. 3d 601, 605, 491 N.E.2d 1294.) The record discloses that Premier's mechanic's lien claim against Chemical Bank was dismissed for failure to comply with the requirements of section 7 of the Act. We agree with the dismissal order. We do not agree that Chemical Bank can be held liable for Premier's claim pursuant to section 28 of the Act. Section 28 provides for claims and suits against owners and contractors. There is no provision for claims or suits against lenders or purchasers at foreclosure sales in that section. Because we are required to strictly construe the Act in this case (*Steinberg v. Chicago Title & Trust Co.*, 142 Ill. App. 3d 601), Premier cannot have a valid lien claim against Chemical Bank merely because it purchased the property at a foreclosure sale. This ruling does not affect the outcome of this case.

We affirm the trial court's determination that the settlement money received from Chemical Bank in exchange for the release of all mechanic's lien claims is money owed to all those with pending claims. In this case, the owner's (666 Associates) interest in the property was subject to the mechanic's lien that had been filed by MDI. If the owner had paid $750,000 to MDI in settlement of the lien, Premier Electrical would have been entitled to a share of the settlement proceeds. While Chemical Bank was not responsible for the owner's obligations, the settlement money received by MDI was paid in exchange for a release of all the mechanic's lien claims, including Premier's claim. As such, the settlement money is money owing to all those with pending claims, including Premier.

We further hold that Premier is entitled to its *pro rata* share of the settlement proceeds, not to the full amount of its claim. Section 28 provides that "the owner shall be liable to [the subcontractor] for no more than the pro rata share that [the subcontractor] would be

entitled to with other sub-contractors out of the funds due to the contractor." 770 ILCS 60/28 (West 1992).

We reject Premier's assertion that it has the only established subcontractor's lien. Subcontractors were due more than $1.2 million in lien claims at the time of the settlement and their liens were dismissed in consideration of the $750,000 settlement payment. Since the money from Chemical Bank was insufficient to cover all the pending liens, each subcontractor is entitled only to its *pro rata* share.

■ Furthermore, the trial court's finding that there should be no constructive trust was proper. A constructive trust is an equitable remedy that may be imposed to redress unjust enrichment caused by a party's wrongful conduct. (*Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 293, 499 N.E.2d 1319.) Generally, a constructive trust is imposed (1) where actual or constructive fraud is considered as equitable grounds for raising the trust; (2) where there is a fiduciary duty and a subsequent breach of that duty; or (3) when duress, coercion or mistake is present. *Suttles v. Vogel* (1988), 126 Ill. 2d 186, 193, 533 N.E.2d 901.

None of those criteria exist in this case. Accordingly, the trial court found that the settlement was made in good faith and there was no need for a constructive trust. We agree.

## PAY-WHEN-PAID CLAUSES

The next issue is whether the trial court erred in granting partial summary judgment to Premier on counts II and III or whether the subcontract's pay-when-paid clauses bar Premier's claims. Count II was the bond claim against Federal Insurance as surety. Count III was the breach of contract claim against MDI.

Premier claims that MDI breached the contract when MDI failed to pay Premier when Premier completed its work. Under the terms of the subcontract agreement between MDI and Premier, Premier claims that the time to pay could be delayed no longer than three months after the subcontractor completed its work. Therefore, Premier claims it is entitled to $362,721.56 plus interest for the breach of contract and the claim on the surety bonds. There is no dispute that Premier has completed its work under the subcontract.

MDI claims that under the terms of the agreement, it does not have to pay Premier until MDI receives payment from the owner. If MDI receives no money, then both MDI and Premier will go without being paid.

Specifically, the payment clause in article 3 of the subcontract provided as follows:

"If the Subcontractor is making satisfactory progress with the

Work (in the General Contractor's reasonable opinion), is not in default under this Agreement, and complies with all the documentation requirements of this Agreement, and *if (but only to the extent that) the General Contractor or his approved Agent, i.e., Chicago Title & Trust has received payment from the Owner for such Work, the General Contractor will make monthly payments to the Subcontractor* of ninety percent of the value of Work performed during the month until the total of monthly payments equals fifty percent (50%) of the total amount to be paid to the subcontractor for the Work by the General Contractor.* From and after the date such fifty percent amount is reached, the General Contractor shall not retain any further amounts from subsequent monthly payments to the Subcontractor. *The amount retained\* by the General Contractor shall be disbursed to the Subcontractor upon the last to occur of (a) Three (3) months after final completion of the Work and acceptance by the Owner; (b) the Owner has paid the General Contractor the entire balance related to the Work due to the General Contractor under the Principal Contact; and* (c) the Subcontractor has delivered to the General Contractor waivers of all liens, as-built drawings (if requested) and guaranties. At such time, the General Contractor shall pay such retainage to the Subcontractor, less any amounts the General Contractor has applied to cure any default under this Agreement.\*\*

    \* Subcontractor will provide trade payment breakdowns for General Contractor's approval by phases, i.e., garage, east condo, west condo, south rental, basement, and 1st floor. Retention shall be disbursed by phase, three (3) months after satisfying the conditions set forth in the subcontract and acceptance by both the Architect and the Owner.

    \*\* The default is to be adjudged by the Architect and the Subcontractor has ample opportunity to correct any such default." (Emphasis added.)

■ MDI and Federal assert that the summary judgment in favor of Premier is erroneous as a matter of law because the pay-when-paid provisions of the subcontract are conditions precedent to any recovery by Premier. A condition precedent is one that must be performed before a contract becomes effective or which is to be performed by one party to an existing contract before the other party is obligated to perform. (*John J. Calnan Co. v. Talsma Builders, Inc.* (1979), 77 Ill. App. 3d 221, 225, 395 N.E.2d 1076.) If there is a condition precedent, the party in whose favor the condition exists is not liable to an action until the other has performed. (*John J. Calnan Co.,* 77 Ill. App. 3d at 225.) However, conditions precedent are not generally favored and courts will not construe stipulations to be a condi-

tion precedent when such a construction would result in forfeiture. *A.A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.* (1985), 132 Ill. App. 3d 325, 329, 477 N.E.2d 30.

The trial court order granting partial summary judgment to Premier on counts II and III stated, in part, as follows:

"G. In summary the key dates here, taken from exhibits, pleadings and discovery admissions in the record, are as follows:

| | | |
|---|---|---|
| 12-17-80 | — | owner/general contractor contract date |
| 1-13-81 | — | general contractor Premier subcontract date |
| 1-26-81 | — | Premier work is commenced |
| 3-22-83 | — | Premier work is completed |
| 6-22-83 | — | 90 days due date for final payment to Premier per subcontract terms |
| 1-6-84 | — | general contractor completes/substantially complete work |
| 1-25-84 | — | Premier files complaint to foreclose mechanics lien |
| 10-11-84 | — | MD/MDI files counterclaim to foreclose mechanics lien |
| 12-18-84 | — | owner files bankruptcy in New York |
| 1-25-85 | — | owner bankruptcy is transferred to Illinois |
| 7-11-85 | — | bankruptcy automatic stay is lifted as to subject property to permit all claimants to proceed with litigation. |

10. By the motion for partial summary judgment and by the motions for modification of the November 23, 1988 order this court is asked to construe the language of the subcontract with respect to when and if payment for subcontractor work done is due from general contractor to subcontractor, and further, to construe the language of the subcontract and its provisions for the rate of prejudgment interest to be paid on the balance due from due date until actual payment or judgment. By the order of November 23, 1988 and by this order the court makes findings which construe the subcontract language as applied to uncontroverted pertinent facts in the record.

11. By the said prior order the court found in favor of summary judgment and found that language inserted by asterisk in Article 3 of the subcontract at page 6, i.e. '... If a conflict arises between Owner and General Contractor .... this subcontractor will receive payment in a timely manner just as if the conflict did not exist ...' supersedes the pay-when-paid provision and renders it inoperable under the uncontroverted facts of this case.

12. MD/MDI/FIC offer the argument that Premier has failed to establish a conflict between owner and general contractor (paragraph 4 F. of this order) other than that owners failed to pay and owner filed for bankruptcy protection and concludes that to

construe such an event as the 'conflict' which renders the pay-when-paid provision inoperable violates a fundamental principal of contact construction.

A. The court finds however, that the event described, i.e. failure of owner to pay general contractor triggered the filing of MD/MDI counterclaim against owner and others on October 11, 1984 and the court further finds the filing of a lawsuit is indeed a 'conflict' in its most obvious and explicit form.

B. The court finds that the general contractor could have added language to the subcontract which expressly identified owner's possible insolvency and/or bankruptcy as an event which excused the general contractor from its obligation to pay subcontractor for its work. The general contractor did not reserve such protection to itself under the language of Article 3.

C. The court therefore must find that a conflict between owner and general contractor did exist and that the inserted language '... If a conflict arises between Owner and General Contractor ... this subcontractor will receive payment in a timely manner just as if the conflict did not exist ...' rendered the pay-when-paid language inoperable under the facts of this case.

13. The court finds the argument made in the motions to reconsider with respect to three of the four requirements to be met to qualify for payment under Article 3 of the subcontract (see paragraph[s] 4E, 5C, 7B of this order) are not a correct recital of this court's finding at paragraph 14 of the November 23, 1988 order. The court found and does again here find that: '... MD/MDI defend against the motion for summary judgment by raising only the pay-when-paid requirement of the contract. In raising only this defense MD/MDI concede that Premier has complied with all other Article 3 requirements for payment ...'

14. MD/MDI/FIC's argument with respect to what defendants refer to as the 'second insertion' in the retainage portion of Article 3 is that the language creates an inconsistency in the application of the pay-when-paid provision if the court finds the first insertion renders the pay-when-paid language inoperable as to subcontactor's monthly draw amounts. Such inconsistency, they argue, creates an ambiguity and precludes summary judgment.

A. Article 3 recites '... The amount retained* by the General Contractor shall be disbursed to the Subcontractor upon the last to occur of (a) Three (3) months after final completion of Work and acceptance by the Owner, (b) the Owner has paid the General Contractor the entire balance related to the work due to the General Contractor under the Principal Contract; and (c) the Subcontractor has delivered to the General Contractor waivers of all liens, as-built drawings (if requested) and guaranties ...'

B. This language is modified by the asterisked insertion '... Subcontractor will provide trade payment breakdowns for General Contractor's approval by phases ... Retention shall be disbursed by phase, three (3) months after satisfying the conditions set forth in the subcontract and acceptance by both the Architect and the Owner ...'

C. Subcontractor is further required to submit completed application for payment, sworn statement for contractor and subcontractor to owner and evidence that its sub-subcontractors and suppliers have been paid.

D. But, Article 3 also contains the following insertion language: '... Final payment shall be held no more than the stated three months in the event that other subcontractor's [sic] or the General Contractor has [sic] not completed their work ...'

E. Retainage monies are withheld from subcontractor payments due for work completed to insure that the work required to be done has been completed in accord with contract terms and if not performed as required by the contract the hold-back of retainage amounts serve to guaranty that subcontractor will cure any defaults in performance of the work. Where an agreement is silent as to the period of time retainage will be held a reasonable time period for withholding retainage funds will be determined by the court. However the court finds this subcontract agreement is not silent as to the time period within which retainage can be held after work is done, but instead the contract language clearly describes the time period for withholding retainage monies from the subcontractor pending determination of satisfactory completion is 90 days.

F. The record establishes the subcontract work was completed March 22, 1983 and the court finds that all retainage monies were due and payable to Premier 90 days thereafter, i.e. June 20, 1983.

G. For all such reasons the court finds the inquiry is moot as to the right of general contractor to retain funds creating an ambiguity which prohibits summary judgment.

15. Since the court has found that MD/MDI/FIC have conceded Premier's compliance with the document submissions of Article 3 (see finding, paragraph 12 of this order) only the pay-when-paid provision remains, and as applied to disbursement of retention monies this insertion language which states '... Final payment shall be held no more than the stated three months in the event that other subcontractors or the General Contractor has not completed their work ...' is controlling. The court finds this provision is not inconsistent with the first insertion language discussed in paragraphs 11, 12, 13 of this order.

16. Accordingly the court affirms the entry of partial summary judgment in favor of Premier against MD/MDI/FIC."

MDI and Federal also contend that the circuit court order was in error and the added language in the first pay-when-paid clause (conflict clause) does not limit the clause's application or render it inoperable.

MDI and Federal maintain that the owner's insolvency was not a conflict so that this court must reject the trial court's order that the pay-when-paid clause is inapplicable due to the owner's insolvency. Instead, MDI and Federal contend that the pay-when-paid clause is designed to protect the general contractor from the owner's insolvency. To support that position, MDI and Federal rely on *Architectural Systems, Inc. v. Gilbane Building Co.* (D. Md. 1991), 760 F. Supp. 79, 82.

While that may be generally true, Premier successfully negotiated the added language, which provides that a conflict is an exception to the condition precedent clause. The subcontract language is clear and unambiguous so that it must be given its natural and ordinary meaning. While the insolvency itself was not a conflict, it was a cause of a conflict. The ensuing claims and lawsuits emanating from the owner's nonpayment due to its insolvency are conflicts. Once MDI filed a counterclaim against the owner to foreclose a mechanic's lien, it created a conflict. If the parties had wanted to exclude insolvency-caused conflicts, they could have easily and expressly done so.

The second pay-when-paid clause involves retainage money. The negotiated language added to the clause provides as follows:

> "Final payment shall be held no more than the stated three months in the event that other subcontractor's [sic] or the General Contractor has [sic] not completed their work."

MDI and Federal argue that the trial court's determination that the retainage provisions were timing provisions, not a condition precedent to payment, was improper. They contend that under the retainage provision, MDI has a separate and independent right to withhold payment of that portion of Premier's claim that is retainage to the extent MDI has not been paid by the owner. MDI and Federal rely only on that part of the retainage provision that states that the amount retained by MDI shall be disbursed to the subcontractor upon the last to occur of three conditions, one of which is that the owner has paid the general contractor the entire balance related to the work due to the general contractor under the principal contract. Since MDI has not been paid in full, MDI and Federal maintain that the condition precedent for payment of retainage has not been performed. Furthermore, MDI and Federal argue that Premier cannot be awarded any judgment because it has never shown how much of its claim is for retainage.

■ We affirm the partial summary judgment in favor of Premier on counts II and III. Construction of the contractual terms is a question of law. (*A.A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.* (1985), 132 Ill. App. 3d 325, 329, 477 N.E.2d 30.) In determining the meaning of the contract, every effort must be made to effectuate the intentions of the parties. (*A.A. Conte, Inc.*, 132 Ill. App. 3d at 328.) If the language is clear and unambiguous, there is no need to resort to the rules of construction or extrinsic evidence to determine the contract's meaning. *A.A. Conte, Inc.*, 132 Ill. App. 3d at 329; *Harris Trust & Savings Bank v. Hirsch* (1983), 112 Ill. App. 3d 895, 899, 445 N.E.2d 1236.

The subcontract's language is clear and unambiguous. The added language overrules any condition precedent. The bargained-for modifications, which are unambiguous and unequivocal, are timing provisions for interim and final payment. As a result, the completion of Premier's work 90 days before MDI's completion triggered Premier's right to final payment as provided for in the provision. Since payment was due no later than 90 days after Premier's last day of work, which was on March 22, 1983, Premier is entitled to final payment no later than June 20, 1983.

Federal's obligations to Premier are the same as MDI's. The obligation of a surety under a payment bond is coextensive with that of its principal. (*Lake View Trust & Savings Bank v. Filmore Construction Co.* (1979), 74 Ill. App. 3d 755, 393 N.E.2d 714.) A subcontractor is the third-party beneficiary of a payment bond furnished by a general contractor to the owner because assurance of payment to subcontractors is the precise reason the bond is given. Lyman, Sklar & Levy, *Miscellaneous Problems & Remedies,* in Mechanics Liens in Illinois § 12.7, at 12—14 (Ill. Inst. for Cont. Legal Educ. 1994).

### INTEREST ON MECHANIC'S LIEN CLAIM

■ Premier asserts that it is entitled to the statutory interest that was in effect at the time judgment was entered, which was 10%.

Prior to January 1, 1990, section 1 of the Act provided that the interest was to be at the legal rate. (*Fischer v. McHenry State Bank* (1979), 74 Ill. App. 3d 509, 392 N.E.2d 995.) Since the Act did not set a rate prior to 1990, we look to the Interest Act (Ill. Rev. Stat. 1989, ch. 74, par. 6402 (now 815 ILCS 205/2 (West 1992))), which is the closest parallel statute. (*Fischer,* 74 Ill. App. 3d at 513.) Under Illinois law, absent an express contract provision allowing interest at a specific rate, a party is' only entitled to prejudgment interest at the statutory rate from the date payment is due to the date of entry of

the judgment. *McCormick v. McCormick* (1988), 180 Ill. App. 3d 184, 211, 536 N.E.2d 419; 815 ILCS 205/2 (West 1992).

Effective January 1, 1990, the Act was amended to provide for a 10% interest rate. (770 ILCS 60/1 (West 1992).) That change is not to be applied retroactively, but prospectively from the effective date of the amendment, since the amendment does not expressly state otherwise. *Noe v. City of Chicago* (1974), 56 Ill. 2d 346, 350, 307 N.E.2d 376.

Accordingly, we conclude that Premier is entitled to 5% interest from June 20, 1983, until the amendment took effect on January 1, 1990. From that date, Premier is entitled to 10% interest until the date judgment was entered.

## INTEREST ON COUNTS II AND III

Premier asserts that it is entitled to 10% interest in its breach of contract and bond claims. Premier argues that article 2 of the subcontract incorporates the entire general contract by reference, including article 7, which provides for a 10% interest rate for all payments under the general contract.

The trial court ordered interest at the statutory rate of 5% from June 20, 1983, to the date of entry of the judgment, November 23, 1988, as prejudgment interest. We agree.

Premier is not entitled to interest on counts II and III greater than the statutory rate. The subcontract does not provide for interest on disputed or late payments and does not incorporate the entire general contract. Article 2 of the subcontract addresses the relative rights and responsibilities between MDI and Premier. It states as follows: "The Subcontractor shall perform the Work and his obligations under this Agreement in accordance with and subject to each of the provisions of the Principal Contract to the full extent that each such provision is applicable to the Work."

Thus, only those general contract provisions that relate to Premier's work are incorporated into the subcontract. Section 7.8.1 is not one of those provisions. It relates only to the test and inspection costs paid by the general contractor, and does not relate to Premier's work. Furthermore, paragraph 7.8.1 is an ancillary provision that pertains only to test and inspection costs. Moreover, article 9 of the general contract, entitled "PAYMENTS AND COMPLETION," is silent regarding interest as to claims for late payments generally.

Next, we reject MDI's assertion that the interest rate awarded was erroneous because the trial court applied the wrong accrual date. We agree with the trial court that the accrual date was 90 days after Premier completed its work on March 22, 1983, as provided for in the subcontract's section on retainage payments.

■ Finally, Premier asserts, and MDI agrees, that Federal's obligation to pay interest under the Bond is identical to that of its principal, MDI, since the Bond expressly incorporated the terms of the general contract by reference.

## RULE 220 EXPERT WITNESSES IN COUNT IV DELAY DAMAGES TRIAL

■ Premier asserts that the trial court's order barring its expert witness, Gary Morgerman, from testifying should be reversed because it did not violate the disclosure requirements of Supreme Court Rule 220. 134 Ill. 2d R. 220.

We find that Morgerman was properly excluded as an expert witness at trial. Rule 220(b) required that Premier disclose Morgerman as an expert within 90 days after the substance of his opinion became known or at the first pretrial conference, whichever was later. On August 10, 1990, Premier told MDI that the witness would be Morgerman. On September 11, 1990, MDI received Premier's answers to MDI's Rule 220 interrogatories (18 days before the trial), which named Morgerman as the expert witness to be called at trial.

We reject Premier's argument that it complied with Rule 220(b) because it disclosed Morgerman as a consulting witness. Rule 220 clearly differentiates between consulting experts and expert witnesses who will testify at trial. In addition, attaching 24 pages of an unsigned draft report does not constitute notice. A complete copy of the draft report was not produced until August 29, 1990.

The imposition of appropriate sanctions for a violation of the discovery rules, including Rule 220, is within the trial court's discretion. (*Kosinski v. Inland Steel Co.* (1989), 192 Ill. App. 3d 1017, 1027, 549 N.E.2d 784.) We conclude that the trial court did not abuse its discretion in excluding Morgerman's testimony at trial.

## EMPLOYEE WITNESSES

■ Next, Premier asserts that the trial court erred when it barred its employee witnesses from testifying as expert witnesses. Premier declares that experts, whether employees or not, who are intimately involved with the events under litigation are not subject to debarment under Rule 220's affirmative identification requirement because they are essentially occurrence experts. *Voyles v. Sanford* (1989), 183 Ill. App. 3d 833, 539 N.E.2d 801.

Although it was error to exclude the testimony of Premier's employee experts, it was harmless error because the trial court allowed Premier's employee witnesses to testify regarding all the issues previously identified by Premier. At the hearing on MDI's motion to bar

Premier's experts, Premier stated that its employee witnesses would testify about the cost of MDI's delays, interpretation of the schedule, and the drawings. At trial, Boyko, Templeman, Hughes, and Zerfass did testify extensively about the schedule, sequencing of work, and Premier's cost.

Unfortunately, there is no offer of proof to determine whether there was other relevant evidence that should have been admitted. An offer of proof is the key to preserving a possible error for excluding evidence. (*Groner v. Regency Federal Savings & Loan Association* (1993), 248 Ill. App. 3d 574, 578, 618 N.E.2d 634.) One of the purposes of the offer of proof is to disclose the nature of the offered evidence so that a reviewing court can determine whether the exclusion was erroneous and harmful. (*Groner*, 248 Ill. App. 3d at 578.) As a result, we conclude that any error was either waived or was harmless.

## COUNT IV—REGARDING ACCELERATION AND DELAY DAMAGES

Following a bench trial, the trial court entered judgment on count IV (acceleration and delay damages) in favor of MDI and against Premier. Premier contends that the trial court's determination that Premier's evidence of damages was speculative and that the delays were partly caused by Premier was against the manifest weight of the evidence.

The issue of apportioning damages in a case of mutual delay is a question of fact to be resolved by the trier of fact. (*Douglas Lumber Co. v. Chicago Home for Incurables* (1942), 380 Ill. 87, 101, 43 N.E.2d 535; *Pathman Construction Co. v. Hi-Way Electric Co.* (1978), 65 Ill. App. 3d 480, 488, 382 N.E.2d 453.) The burden of proof is on the party claiming delay damages to prove the amount of delay, the amount of damages attributable to that delay (*United States ex rel. Gray-Bar Electric Co. v. J.H. Copeland & Sons Construction, Inc.* (5th Cir. 1978), 568 F.2d 1159, 1162), and that those delays were caused by the other party separate from any damages that may have resulted from the acts of the claimant. *Pathman Construction Co.*, 65 Ill. App. 3d at 488.

Damages must be proven with reasonable certainty to assure a fair and just result. (*Pathman Construction Co.*, 65 Ill. App. 3d at 487.) The claimant can meet its burden of production by presenting a before-and-after comparison accompanied by a plausible though not necessarily conclusive connection between the difference and the defendant's wrongdoing. *AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.* (7th Cir. 1990), 896 F.2d 1035, 1046.

Premier failed to meet that burden. Although Premier pre-

sented a before-and-after comparison, it failed to present any connection between the difference in its labor hours and any wrongdoing by MDI.

The evidence is voluminous and it would unduly extend this opinion to relate the conflicting evidence as to each contested item. However, after examining the testimony, we conclude that it amply supports the trial court's findings of fact.

The evidence presented at trial includes delays by both Premier and MDI. Premier's evidence was merely that it spent labor hours in excess of its anticipated labor hours. Furthermore, Premier's evidence on delay causation failed to account for any delays or extra time for which Premier was responsible.

## COUNT V—VEXATIOUS DELAY CLAIM

After the trial court entered a partial summary judgment on the claim on Bond and breach contract, it granted Premier leave to amend its complaint to add count V, which alleged that Federal had violated section 154.6 of the Illinois Insurance Code and in bad faith failed to investigate the Bond claim Premier had submitted to Federal.

In granting Federal's motion for summary judgment, the trial court expressly relied on *Yassin*, 133 Ill. 2d 458, 551 N.E.2d 1319, where a personal injury plaintiff holding a $300,000 judgment filed a garnishment action against the tortfeasor's insurers to enforce and collect its judgment. The plaintiff sought, but was denied, relief under section 155.

*Yassin* stated:

"As a general rule, the remedy embodied in section 155 of the Insurance Code extends only to the party *insured* [citation] and policy assignees [citations]. Therefore, the remedy embodied in section 155 of the Insurance Code does not extend to third parties." *Yassin*, 133 Ill. 2d at 466.

Based on *Yassin*, we affirm the trial court's determination that Premier does not have standing to bring a section 155 claim.

## CIRCUIT COURT RULES

Finally, Premier asserts that the trial court erred in prematurely hearing Federal's motion for summary judgment in violation of Cook County Circuit Court Rule 2.1(e) and abused its discretion by not allowing Premier the time required by local rule to respond.

Cook County Circuit Court Rule 2.1(e) states:

"A *motion for summary judgment shall not be held until ten (10) days after service of the notice of motion under Supreme Court Rule 11.*" Cook County Cir. Ct. R. 2.1(e).

On September 28, 1990, three days before trial, Federal served its motion for summary judgment on count V for vexatious delay. The motion was heard and the summary judgment order was entered on October 4, 1990.

■ A local rule has the force of a statute and is binding on the trial court as well as the parties. (*In re Estate of Young* (1953), 414 Ill. 525, 535, 112 N.E.2d 113; *Scoby v. Vulcan-Hart Corp.* (1989), 188 Ill. App. 3d 89, 544 N.E.2d 106.) The party who moves for summary judgment must comply with the applicable statutes and local court rules. (*Deaton v. Lloyd's Jewelry Co.* (1972), 7 Ill. App. 3d 926, 929, 289 N.E.2d 123.) Failure to follow the local court rules will preclude the granting of a summary judgment motion. (*Deaton*, 7 Ill. App. 3d at 929.) In *Deaton*, there was no prior notice of the motion.

■ A trial court must follow its rules of notice when those rules are not in conflict with a statute or supreme court rule, particularly when a party objects to any waiver of the rules. (*Scoby*, 188 Ill. App. 3d at 94.) The Code of Civil Procedure provides that a plaintiff, and a defendant, may move for summary judgment at any time, with exceptions not applicable in this case, and that the summary judgment sought shall be rendered without delay. (735 ILCS 5/2—1005 (a), (b), (c) (West 1992).) In this case, there were six days between the service of the motion for summary judgment and the hearing. We do not believe that the difference between the 10-day delay provided by the local court rule and the six days in this case was substantial. The statute provides that the judgment shall be rendered without delay, but we do not decide here whether there is a conflict between the local court rule and the statute. The partial summary judgment is affirmed.

Based on the foregoing, we affirm the circuit court judgment and remand for the recalculation of the interest on count I in accordance with this opinion.

Affirmed and remanded.

RIZZI and TULLY, JJ., concur.