# Illinois Official Reports

## Supreme Court

---

**People v. Vara, 2018 IL 121823**

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RICARDO VARA, Appellee. |
| Docket No. | 121823 |
| Filed<br>Rehearing denied | June 1, 2018<br>September 24, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Second District; heard in that court on appeal from the Circuit Court of Stephenson County, the Hon. Michael P. Bald, Judge, presiding. |
| Judgment | Appeal dismissed.<br>Appellate court judgment vacated. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Carl Larson, State's Attorney, of Freeport (David L. Franklin, Solicitor General, Michael M. Glick and Joshua M. Schneider, Assistant Attorneys General, of Chicago, and Patrick Delfino, Lawrence M. Bauer, and Marshall M. Stevens, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People. |

Michael J. Pelletier, State Appellate Defender, Thomas A. Lilien, Deputy Defender, and Jaime L. Montgomery, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

Justices

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Justices Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion.

Chief Justice Karmeier dissented, with opinion, joined by Justice Thomas.

Justice Thomas dissented, with opinion, joined by Chief Justice Karmeier.

Chief Justice Karmeier and Justice Thomas dissented upon denial of rehearing, without opinion.

**OPINION**

¶ 1 Following a bench trial in the circuit court of Stephenson County, defendant Ricardo Vara was convicted of child pornography (720 ILCS 5/11-20.1(a)(6)(vii) (West 2012)). The circuit court sentenced defendant to serve a three-year term of imprisonment and imposed certain fines mandated by various statutory provisions. Thereafter, the clerk of the circuit court included several entries in the electronic accounts receivable record pertaining to defendant's conviction. Several of those data entries indicated that defendant was obligated to pay other mandatory fines not specified in the circuit court's judgment. On appeal, defendant challenged the data entries recorded by the circuit clerk that purported to assess additional fines not imposed by the circuit court. The appellate court vacated the challenged data entries and rejected the State's argument that the appellate court had authority to order imposition of the mandatory fines that were not imposed by the circuit court. 2016 IL App (2d) 140848. This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015). For the reasons that follow, we find that the appellate court lacked jurisdiction to review the clerk's recording of fines that were not ordered by the circuit court. Accordingly, we vacate the judgment of the appellate court and dismiss the appeal.

¶ 2 I. BACKGROUND

¶ 3 After a bench trial, defendant was convicted of child pornography (720 ILCS 5/11-20.1(a)(6) (West 2012)). At the sentencing hearing on August 8, 2014, the circuit court sentenced defendant on that conviction and on another conviction resulting from a separate prosecution. With regard to the child pornography conviction, the court ordered defendant to serve three years in prison and imposed the following mandatory fines: a $1000 child pornography fine (*id.* § 11-20.1(c)), a $500 sex offender fine (730 ILCS 5/5-9-1.15 (West

2012)), and a $500 additional child pornography fine (*id.* § 5-9-1.14).[1] The court also imposed a $200 fine that was described at the sentencing hearing as a "sheriff's office fine" but was referenced in the written sentencing order as a "sexual assault fine" (*id.* § 5-9-1.7).

¶ 4    Defendant filed a motion to reduce his sentence but did not dispute the validity of the fines imposed by the circuit court. Defendant's motion was denied, and he timely filed a notice of appeal on August 22, 2014. The record on appeal was filed in October 2014.

¶ 5    In April 2016, the appellate court granted defendant leave to supplement the record to include a document titled "payment status information," which bears the seal of the circuit court of Stephenson County. A certification on the payment status information sheet is signed by a deputy circuit clerk and is dated April 13, 2016, approximately 18 months after entry of the circuit court's final judgment. The payment status information sheet lists entries for fees charged to defendant as well as mandatory fines, several of which were not included in the circuit court's judgment. According to the payment status information sheet, the following fines and fees were charged to defendant: "Court" ($50), "Youth Diversion" ($5), "Violent Crime" ($100), "Lump Sum Surcharge" ($250), "Sexual Assault" ($200), "Sex Offender Regis" ($500), "Medical Costs" ($10), "State Police Ops" ($15), "Child Pornography" ($495), and "Clerk Op Deduction" ($5).

¶ 6    On appeal, defendant did not attack his conviction, his prison sentence, or the monetary sanctions imposed by the circuit court. His sole contention was that the fine assessments that were detailed in the payment status information sheet but not referenced by the court were invalid and should be vacated. Defendant argued that, although the challenged fines were mandated by statute, they were void because the circuit clerk lacked the authority to levy fines. The State agreed that the fines purportedly assessed by the circuit clerk were invalid but requested that the appellate court either impose the mandatory fines or remand to the circuit court with instructions to do so.

¶ 7    The appellate court vacated the fines challenged by defendant and refused the State's request that it impose the fines or order the circuit court to do so on remand. 2016 IL App (2d) 140848, ¶¶ 8-10, 37. The appellate court explained that, pursuant to this court's decision in *People v. Castleberry*, 2015 IL 116916, it did not have authority to address the State's request for correction of a sentence that does not comply with the statutory requirements. 2016 IL App (2d) 140848, ¶¶ 25, 37.

¶ 8    The State appeals to this court.

¶ 9                                    II. ANALYSIS

¶ 10   In this court, the State attacks the appellate court's judgment on several grounds. First, the State contends that the appellate court lacked jurisdiction to review the circuit court clerk's recording of mandatory fines that were not included as part of the court's final judgment. In the alternative, the State asserts that, if the appellate court had jurisdiction, that court had authority to impose the mandatory fines or remand the cause to the circuit court with instructions to

---

[1]The statutory provision mandating this fine requires that $495 is to be remitted to the unit of government whose law enforcement officers investigated the case that led to the conviction and $5 is to be deposited into the Circuit Court Clerk Operation and Administration Fund. 730 ILCS 5/5-9-1.14 (West 2012).

impose the fines as required by statute. The State also claims that the appellate court erred in vacating the $200 sexual assault fine identified in the circuit court's written sentencing order. Finally, the State argues that in resolving this appeal we should amend our rules to allow for correction of statutorily unauthorized sentences at any time by motion in the circuit court.

¶ 11 Defendant counters that the appellate court had jurisdiction to vacate the unauthorized fines assessed by the clerk of the circuit court but lacked the authority to impose the mandatory fines or to order that the circuit court do so on remand. He further argues that the appellate court correctly vacated the $200 sexual assault fine referenced on the circuit clerk's payment status information sheet because the trial judge did not impose that fine at the sentencing hearing. Lastly, defendant opposes the State's request for amendment of our rules in disposing of this appeal because no compelling reason justifies suspension of our typical rulemaking procedure.

¶ 12 At the outset, we note that no jurisdictional defect was asserted in the appellate court. However, a reviewing court is obligated to ascertain its jurisdiction before proceeding in a cause of action, regardless of whether the issue has been raised by either party. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) (citing *People v. Smith*, 228 Ill. 2d 95, 106 (2008), and *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998)). Jurisdiction cannot be conferred by agreement of the parties, and a lack of appellate jurisdiction is not subject to forfeiture. *People v. Holmes*, 235 Ill. 2d 59, 66 (2009); *Franson v. Micelli*, 172 Ill. 2d 352, 355 (1996); *Brauer Machine & Supply Co. v. Parkhill Truck Co.*, 383 Ill. 569, 573 (1943). Consequently, we begin by addressing the State's argument that the appellate court lacked jurisdiction to review the fines recorded by the circuit clerk on the payment status information sheet. The determination of whether the appellate court had jurisdiction to consider an appeal is a question of law, which we review *de novo*. *People v. Shinaul*, 2017 IL 120162, ¶ 8.

¶ 13 Article VI, section 6, of the Illinois Constitution confers on the appellate court jurisdiction to review final judgments entered by the circuit court. Ill. Const. 1970, art. VI, § 6; *Shinaul*, 2017 IL 120162, ¶ 10. A final judgment "determines the litigation on the merits such that the only thing remaining is to proceed with execution of judgment." *Shinaul*, 2017 IL 120162, ¶ 10; *People v. Pawlaczyk*, 189 Ill. 2d 177, 186 (2000). The rendition of a judgment is a judicial act, performed by the court at the time it makes its pronouncement. *In re Estate of Young*, 414 Ill. 525, 533 (1953) (citing *People ex rel. Waite v. Bristow*, 391 Ill. 101 (1945), and *Smyth v. Fargo*, 307 Ill. 300 (1923)).

¶ 14 In a criminal case, the final judgment is the sentence. *People v. Allen*, 71 Ill. 2d 378, 381 (1978). The imposition of a criminal sentence is the judicial act that comprises the judgment of the court. *Id.* (citing *People v. Moran*, 342 Ill. 478 (1930)). A fine constitutes a pecuniary punishment imposed on a person guilty of committing an offense. *People v. Graves*, 235 Ill. 2d 244, 250 (2009); *People v. Jones*, 223 Ill. 2d 569, 581 (2006). Because the imposition of a fine as part of a criminal sentence is a judicial function, it can be performed only by a judge of the circuit court. See *Allen*, 71 Ill. 2d at 381; *Moran*, 342 Ill. at 480.

¶ 15 The Illinois Constitution also provides that clerks of courts are nonjudicial officers of the court. Ill. Const. 1970, art. VI, § 18; *Walker v. McGuire*, 2015 IL 117138, ¶ 30 (citing *Drury v. County of McLean*, 89 Ill. 2d 417, 423 (1982)); see also *Hall v. Marks*, 34 Ill. 358, 363 (1864). As such, a circuit clerk performs no adjudicative or quasi-judicial function and is, instead,

" 'an officer of the court who has charge of the clerical part of its business.' " *Walker*, 2015 IL 117138, ¶ 30 (quoting *People ex rel. Vanderburg v. Brady*, 275 Ill. 261, 262 (1916)); see also *County of Kane v. Carlson*, 116 Ill. 2d 186, 200-01 (1987).

¶ 16    Indeed, the clerical responsibilities of circuit clerks have been circumscribed by statute since 1845. See Ill. Rev. Stat. 1845, ch. 29, § 35. Under our current statute, the Clerks of Courts Act (Act) (705 ILCS 105/1 *et seq.* (West 2016)), the duties of court clerks include the obligation to preserve all the files and papers of their respective courts and to keep complete records of all the proceedings and determinations thereof. *Id.* § 13. In addition, section 14 of the Act specifically provides that circuit clerks "shall enter of record all judgments and orders of their respective courts, as soon after the rendition or making thereof as practicable." *Id.* § 14.

¶ 17    Acknowledging the sharp divide between the adjudicative role of the court and the clerical function of a circuit clerk, this court has held:

> " '[T]here is a well-recognized distinction between rendering a judgment and entering a judgment. The former is the judicial act of the court in pronouncing its ruling or finding in the controversy; the latter is the ministerial act of the clerk in preserving the record of that decision.' " *Williams v. BNSF Ry. Co.*, 2015 IL 117444, ¶ 39 (quoting *Freeport Motor Casualty Co. v. Tharp*, 406 Ill. 295, 299 (1950)).

See also *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6, 16 (1992) (holding that the rendition of a judgment is independent from the ministerial function of its entry by the circuit clerk); *Bristow*, 391 Ill. at 114 (same); *Smyth*, 307 Ill. at 305-06 (same); *People ex rel. Isaacs v. Johnson*, 26 Ill. 2d 268, 273-74 (1962) (declaring certain tax laws unconstitutional because they directed the circuit clerk to enter judgments).

¶ 18    Pursuant to the Illinois Constitution, the terms of the Act, and our long-standing precedent, a circuit clerk is obligated to record the ruling of the court and has no authority to enter a judgment on his or her volition. See *Hall*, 34 Ill. at 363 (holding that a circuit clerk possesses no power to render a judgment and is only authorized to enter a judgment pursuant to the direction of the court); see also *In re Estate of Young*, 414 Ill. at 533-34 (holding that the judgment recorded by the clerk must conform to the judgment pronounced by the court and that "[a]ny other rule would permit the clerk to exercise a judicial function beyond his normal ministerial activity"); *People ex rel. Pardridge v. Windes*, 275 Ill. 108, 113 (1916) (holding that circuit clerk's entry of the court's orders is subject to judicial control and "[h]e is not privileged to enter orders as he sees fit, contrary to the direction of the court"). Thus, circuit clerks are duty bound to record the judgment issued by the court and must do so in a manner that accurately reflects the intention of the court. See *Bristow*, 391 Ill. at 109-10.

¶ 19    The judgment of the court is shown by the record kept by the circuit clerk. *People v. Kamrowski*, 412 Ill. 383, 387 (1952); *Bristow*, 391 Ill. at 109-10; *People ex rel. Holbrook v. Petit*, 266 Ill. 628, 631-32 (1915). Any action taken by a circuit clerk that purports to alter the judgment of the court is invalid. See *Hall*, 34 Ill. at 363. Because the imposition of a sentence is reserved exclusively for the judiciary, a circuit clerk has no authority to assess a criminal fine that was not imposed by the court. *Allen*, 71 Ill. 2d at 381; *Moran*, 342 Ill. at 480.

¶ 20    In applying these principles to the question of appellate jurisdiction here, it is essential to bear in mind what defendant challenged in his appeal and what he did not. Defendant sought relief as to certain fines that were recorded by the circuit clerk on the payment status information sheet but were not referenced by the circuit court. Defendant did not attack the

validity of his conviction, his prison sentence, or the fines imposed by the circuit court at the time of sentencing. Thus, this case presents the anomalous circumstance in which a defendant has filed an appeal seeking to *uphold* the judgment entered by the circuit court.

¶ 21 The circuit court's judgment is reflected by the report of proceedings and the written sentencing order signed by the trial judge, which demonstrate that the court imposed four monetary sanctions on defendant: a fine of $1000, two fines of $500 each, and a fine of $200. The data entries referencing other fines not imposed by the court did not accurately reflect the judgment that was entered at the time of sentencing.

¶ 22 In addition, the payment status information sheet, dated approximately 18 months after the court's final judgment, is a document that was created outside the record of the trial court proceedings. Although defendant was granted leave to include it as a "supplement" to the record, that leave was not warranted. Illinois Supreme Court Rule 608 (eff. July 1, 2017) details the items that are to be included in the record on appeal in a criminal case. The payment status information sheet is not part of the common-law record or the report of proceedings of defendant's criminal prosecution. Under Illinois Supreme Court Rule 329 (eff. Jan. 1, 2006),[2] a supplemental record may be filed to correct material omissions or inaccuracies or if the record is insufficient to present fully and fairly the question involved. Amendment of the record is not to be used as a device for inserting extraneous materials into the record on appeal. The payment status information sheet at issue here cannot be characterized as a "material omission" or something that should have been included in the record of the proceedings before the circuit court.

¶ 23 Because the circuit clerk had no authority to levy any fines against defendant, the recording of the additional fines was invalid and unenforceable. However, the fact that the clerk's action was improper does not mean that defendant can challenge the unauthorized fines through the appeal process. The appellate court is constitutionally vested with jurisdiction to review final judgments entered by circuit courts. The recording of a fine is a clerical, ministerial function and is not a judgment—void or otherwise. Therefore, the improper recording of a fine is not subject to direct review by the appellate court. Accordingly, we agree with the State that the appellate court lacked jurisdiction to review the clerk's recording of mandatory fines that were not included as part of the circuit court's final judgment.

¶ 24 In reaching this conclusion, we reject defendant's argument based on our 2012 decision in *People v. Gutierrez*, 2012 IL 111590. In that case, the defendant filed an appeal challenging the circuit clerk's assessment of a public defender fee, which could only be imposed by the trial court after notice and a hearing. *Id.* ¶¶ 3, 16, 19. In doing so, the defendant asserted that the clerk had acted beyond its authority in imposing the fee and characterized the clerk's action as an "order" that was "void." *Id.* ¶ 14. This court accepted the defendant's characterization of the circuit clerk's action and concluded that the appellate court had jurisdiction to consider whether the public defender fee was improperly imposed. *Id.* That conclusion was premised on what had been termed the "void sentence rule," which allowed a statutorily unauthorized sentence to be attacked at any time or in any court. *Id.* (citing *People v. Thompson*, 209 Ill. 2d 19, 25 (2004)). At that time, the void sentence rule had been understood to apply to the

---

[2]Rule 329 is applicable to criminal appeals pursuant to Illinois Supreme Court Rule 612 (eff. Feb. 6, 2013).

unauthorized assessment of a fine or fee by a circuit clerk. *Id.* (citing *People v. Shaw*, 386 Ill. App. 3d 704, 710-11 (2008)). Appellate review of such action was considered to be a pragmatic and efficient means of ensuring that criminal sentences complied with statutory mandates. *Id.* ¶ 14 n.1.

¶ 25 However, the legal landscape has changed dramatically since *Gutierrez* was decided. In *Castleberry*, 2015 IL 116916, ¶ 18, we abolished the void sentence rule as unsound because it could not be reconciled with the constitutional grant of jurisdiction and was inconsistent with our precedent in civil appeals. The elimination of the void sentence rule substantially undermined the analytical foundation of the jurisdictional discussion in *Gutierrez*. After we issued our decision in *Castleberry*, this court discussed the decision in *Gutierrez*. In *People v. Hardman*, 2017 IL 121453, ¶ 55, we specifically recognized that where the circuit clerk purported to assess a public defender fee, which could only be imposed by a court after a hearing, "there was no circuit court order" requiring the fee and "the appellate court could not remand for a hearing on an order that did not exist." Thus, our decision in *Hardman* recognized the fundamental distinction between a court order and the ministerial action of a circuit clerk. *Id.* In light of our recent jurisprudence, defendant's reliance on *Gutierrez* is misplaced.

¶ 26 Our dissenting colleagues disagree, and they rely on section 16(5) of the Act (705 ILCS 105/16(5) (West 2012)) as support for the assertion that the clerk's assessments are considered part of the judgment. *Infra* ¶¶ 44-45, 63-69, 86. That assertion has no purchase within the context of this case. Section 16(5), which sets forth the circuit clerk's responsibility for maintenance of a "fee book," pertains exclusively to the assessment of fees. Fines are not mentioned anywhere in that provision, and there is no indication from its language that the information recorded in the "fee book" would ever include the imposition of a criminal fine. Given that fees and fines are substantively different (*Jones*, 223 Ill. 2d at 581), it cannot be said that the language of section 16(5) applies to criminal fines. Therefore, section 16(5) has no bearing here.

¶ 27 Reliance on section 16(5) is problematic for other reasons as well. First, if section 16(5) is interpreted as our dissenting colleagues suggest, it would defeat the very crux of defendant's argument—which is that certain fines included on the payment status information sheet were invalid *because* they were not part of the court's final judgment. In addition, such interpretation necessarily equates a clerk's recording of a fine with a judicial act. That notion must be rejected for the obvious reason that it would amount to a grant of judicial power to circuit clerks.

¶ 28 Moreover, the application of section 16(5) here is inconsistent with the reasoning expressed in *Gutierrez*, which found appellate jurisdiction to address an argument that the circuit clerk acted beyond its authority in assessing a public defender fee, rendering the fee "void." *Gutierrez*, 2012 IL 111590, ¶ 14. The "voidness" of the clerk's action in *Gutierrez* was based on the fact that the clerk lacked authority to impose such a fee. *Id*. But the fundamental reason that the clerk's action was unauthorized was because the public defender fee had not been ordered by the circuit court—*i.e.*, the fee was not part of the court's judgment. If the public defender fee at issue in *Gutierrez* had been included as part of the judgment entered by the circuit court, the clerk's recording of that fee would have been authorized—indeed, it would have been mandatory. See 705 ILCS 105/14 (West 2012); *Bristow*, 391 Ill. at 109-10. Acceptance of the dissenting justices' view that a circuit clerk's recording of such a fee or a

criminal fine automatically becomes part of the court's judgment, by virtue of section 16(5), would nullify the underlying premise of *Gutierrez*'s jurisdictional analysis.

¶ 29     Also, contrary to the view expressed by Justice Thomas in his dissent (see *infra* ¶¶ 84-88, 90, 93), the circuit court's inherent authority to correct its own orders and records does not expand the constitutional grant of jurisdiction to the appellate court. The fact that the circuit court could order the clerk to rectify a clerical error in recording the judgment cannot serve as the genesis for appellate jurisdiction. A direct appeal from a circuit clerk's recording error is essentially no different than permitting the appellate court to exercise original *mandamus* jurisdiction—which it does not possess. See Ill. Const. 1970, art. VI, § 6. Consequently, reliance on the circuit court's inherent authority to resolve this appeal is incorrect.

¶ 30     As set forth above, the clerk of the circuit court of Stephenson County exceeded his statutorily prescribed authority by recording mandatory fines against defendant that were not imposed by the trial judge at the time of sentencing. That action was not the entry of a judgment but was, instead, the erroneous recording of the circuit court's judgment. Accordingly, the appellate court lacked jurisdiction to review the validity of the fines challenged by defendant in this case. Where the appellate court has addressed the merits of a case over which it had no jurisdiction, we must vacate that court's judgment and dismiss the appeal. *Micelli*, 172 Ill. 2d at 355.

¶ 31     In light of our conclusion that the appellate court lacked jurisdiction to entertain defendant's appeal, we need not address the State's alternative argument that the appellate court had authority to order the imposition of the mandatory fines that were not imposed by the circuit court. We also do not address the State's claim that the appellate court erred in vacating the $200 sexual assault fine. Any questions as to the accuracy of the data entries included in the payment status information must be resolved through the cooperation of the parties and the circuit clerk or by the circuit court in a *mandamus* proceeding. See *People ex rel. Senko v. Meersman*, 2012 IL 114163, ¶ 9 (recognizing that a writ of *mandamus* is a judicial order used to compel a public official to perform a nondiscretionary, ministerial duty); see also *Dennis E. v. O'Malley*, 256 Ill. App. 3d 334, 346 (1993) (holding that an action for *mandamus* can be used to compel a circuit clerk to comply with statutory duties). However, we take this opportunity to firmly reiterate our admonishment to circuit clerks that they may not, on their own initiative, assess any criminal fines or fees that must be imposed by a court. See *Gutierrez*, 2012 IL 111590, ¶ 26. Such overstepping by circuit clerks of their statutory authority cannot be condoned.

¶ 32                                    III. CONCLUSION

¶ 33     For the foregoing reasons, the judgment of the appellate court is vacated, and the appeal is dismissed for lack of jurisdiction.

¶ 34     Appeal dismissed.

¶ 35     Appellate court judgment vacated.

¶ 36    CHIEF JUSTICE KARMEIER, dissenting:

¶ 37    I join Justice Thomas's dissent and write separately only to emphasize the majority's flawed analysis.

¶ 38    Defendant's case is not unique. There are hundreds of criminal appeals involving the issue of fines and fees that were overlooked at the trial court level and instead raised for the first time on appeal. Defendants are time and time again faced with the grueling and burdensome task of challenging fines and fees that were illegally assessed against them. Our appellate court, as recently as this year, has criticized the "labyrinthine system of criminal fines and fees" and highlighted the failure of the clerk's office to update its form order. *People v. Smith*, 2018 IL App (1st) 151402, ¶ 10; *People v. Mullen*, 2018 IL App (1st) 152306. In the last few years, multiple news and media outlets have brought attention to the issue of fines, fees, and costs assessed to defendants in not only Illinois (see Brian Mackey, *Illinois Issues: Still Paying For Justice*, NPR Ill. (July 7, 2016), http://nprillinois.org/post/illinois-issues-still-paying-justice#stream/0; Ivan Moreno, *Illinois Court Fees Rising to Cover Special Programs*, St. J. Reg. (July 10, 2016), http://www.sj-r.com/news/20160710/illinois-court-fees-rising-to-cover-special-programs (discussing the disparity in fines, fees, and costs across counties and questioning what those funds go toward)) but around the country (see Matt Zapotosky, *Justice Department Warns Local Courts About Unlawful Fines and Fees*, Wash. Post (March 14, 2016), https://www.washingtonpost.com/world/national-security/justice-department-warns-local-courts-about-unlawful-fines-and-fees/2016/03/13/c475df18-e939-11e5-a6f3-21ccdbc5f 74e_story.html; Robin McDonald, *Grady County Is Asked to Repay Thousands in Illegal Court Fees*, S. Ctr. for Human Rights (Aug. 9, 2013), https://www.schr.org/resources/ grady_county_is_asked_to_repay_thousands_in_illegal_court_fees; Campbell Robertson, *Suit Alleges "Scheme" in Criminal Costs Borne by New Orleans's Poor*, N.Y. Times (Sept. 17, 2015), https://www.nytimes.com/2015/09/18/us/suit-alleges-scheme-in-criminal-costs-borne-by-new-orleanss-poor.html; Joseph Shapiro, *As Court Fees Rise, the Poor Are Paying the Price*, NPR (May 19, 2014), https://www.npr.org/2014/05/19/312158516/increasing-court-fees-punish-the-poor).

¶ 39    Recognizing these problems, the legislature, through the Access to Justice Act (705 ILCS 95/25 (West 2014)), created the Statutory Court Fee Task Force, composed of members appointed by representatives of all three branches of Illinois government and both political parties, to study the current system of fees, fines, and other court costs. The task force created a report that proposed recommendations to the Illinois General Assembly and this court, in an attempt to address the problems with the current system of court fines and fees. Statutory Court Fee Task Force, *Illinois Court Assessments: Findings and Recommendations for Addressing Barriers to Access to Justice and Additional Issues Associated With Fees and Other Court Costs in Civil, Criminal, and Traffic Proceedings* (June 1, 2016), http://www.illinoiscourts.gov/2016_Statutory_Court_Fee_Task_Force_Report.pdf.

¶ 40    The task force acknowledged that assessments against criminal defendants vary widely from county to county. *Id.* Further, there is no one statute that lays out all of the existing fines, fees, or costs that may be assessed against criminal defendants. *Id.* The four key findings of the task force were that (1) the nature and purpose of assessments have changed over time, leading to a byzantine system that attempts to pass an increased share of the cost of court administration onto the parties to court proceedings, (2) court fines and fees are constantly

- 9 -

increasing and are outpacing inflation, (3) there is excessive variation across the state in the amount of assessments for the same type of proceedings, and (4) the cumulative impact of the assessments imposed on parties to civil law suits and defendants in criminal and traffic proceedings imposes severe and disproportionate impacts on low and moderate income Illinois residents. *Id.*

¶ 41    Unfortunately, since that report was released nearly two years ago, little has changed. Therefore, it is incumbent on our courts to ensure that criminal defendants are not being further marginalized by having illegal and void assessments imposed against them following trial. Although we have emphasized the need for both parties and the court to be diligent in reviewing fines and fees entered following trial, their failure to do so is not uncommon. The Chicago Appleseed Fund for Justice indicated that, in Cook County, nearly all criminal defendants have improper court costs assessed against them following a conviction. Chicago Appleseed Fund for Justice, *Appleseed Applauds Efforts to Curb Illegally Imposed Criminal Court Fines, Fees, and Costs; Releases New Resource for Defense Attorneys* (Feb. 14, 2018), http://www.chicagoappleseed.org/ffcappeals/. A simple search reveals that there were well over a hundred cases, in 2016 alone, in which a defendant challenged the imposition of fines and/or fees on appeal. See *People v. Griffin*, 2017 IL App (1st) 143800, ¶ 5. Clearly, defendant's case is not unique, and this problem continues to persist.

¶ 42    While many of these errors should be discovered and resolved at the trial court level, it has been our position and custom, as Justice Thomas aptly indicates, to allow the appellate court the opportunity to correct erroneous fines and fees on appeal, as long as the appeal is properly before the appellate court. See *People v. Gutierrez*, 2012 IL 111590; *People v. Lewis*, 2018 IL App (4th) 150637; *People v. Glass*, 2017 IL App (1st) 143551, ¶¶ 21-25; *People v. Brown*, 2017 IL App (3d) 140921, ¶¶ 42-46; *People v. Truesdell*, 2017 IL App (3d) 150383; *People v. Larue*, 2014 IL App (4th) 120595; *People v. Smith*, 2014 IL App (4th) 121118; *People v. Rexroad*, 2013 IL App (4th) 110981, ¶ 43; *People v. Nelson*, 2017 IL App (3d) 150220-U, ¶ 15; *People v. Garske*, 2017 IL App (3d) 140839-U, ¶¶ 39-40; *People v. Six*, 2017 IL App (4th) 150624-U, ¶ 21*; People v. Monroe*, 2016 IL App (4th) 140522-U, ¶ 24. Just a few months ago, under our supervisory authority, we directed an appellate court panel to vacate its dismissal of the appeal for lack of jurisdiction and to address the issue of whether the amount of fines, fees, and costs assessed against defendant was correct. *People v. Warren*, No. 122639 (Ill. Nov. 22, 2017) (supervisory order). To hold otherwise now runs afoul of not only our precedent but also common sense.

¶ 43    Illinois courts have held that, through a notice of appeal, courts of review obtain jurisdiction over the judgment specified in that notice of appeal. *People v. Smith*, 228 Ill. 2d 95, 104 (2008); *Illinois Health Maintenance Organization Guaranty Ass'n v. Shapo*, 357 Ill. App. 3d 122, 148 (2005); *Citizens Against Regional Landfill v. Pollution Control Board*, 255 Ill. App. 3d 903, 909 (1994). However, we have also consistently understood that a notice of appeal is to be construed liberally and will generally be accepted as long as it fairly and adequately identifies the complained-of judgment. *People v. Lewis*, 234 Ill. 2d 32, 37 (2009). Here, it seems obvious that defendant's timely notice of appeal, which identified his conviction and sentence and conformed with our court rules (Ill. S. Ct. R. 606 (eff. Feb. 6, 2013)), properly put in issue the illegal fines assessed against him by the circuit clerk. This is especially true given that the legislature has provided that assessment of fees and costs by the

circuit clerk shall be considered part of the record and judgment of a case. 705 ILCS 105/16(5) (West 2014).

¶ 44 As Justice Thomas notes, section 16 of the Clerks of Courts Act requires the circuit clerk to maintain a fee book, which shall be considered part of the record and judgment, subject to the correction of the court. 705 ILCS 105/16(5) (West 2016). Although the Clerks of Courts Act itself speaks in terms of fees rather than fines, it would be incongruous for this court to treat fines differently in cases like the one before us today. The legislature has a long history of misusing the terms fines and fees. See *People v. Jones*, 223 Ill. 2d 569 (2006) (holding that a $500 controlled substance assessment was a "fine," for presentencing incarceration credit, a $100 trauma fund charge was a "fine," for purposes of presenting incarceration credit, and a $5 spinal cord trauma fund charge was a "fine"); *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 22 (holding that a $50 court system fee is actually a fine); *People v. Maxey*, 2016 IL App (1st) 130698, ¶¶ 140-41 (holding that a $15 state police operations fee is actually a fine), *vacated on other grounds*, No. 121137 (Ill. Nov. 22, 2017) (supervisory order); *People v. Graves*, 235 Ill. 2d 244 (2009) (holding that a county mental health court fee and a youth diversion/peer court fee were properly viewed as fines); *People v. Price*, 375 Ill. App. 3d 684 (2007) (holding that the $10 mental health court fee and the $5 youth diversion/peer court fee are fines); *People v. Millsap*, 2012 IL App (4th) 110668 (holding that, despite its statutory label, the State Police operations assistance fee is a fine); *People v. Hible*, 2016 IL App (4th) 131096 (holding that a court systems assessment is a fine); *Larue*, 2014 IL App (4th) 120595 (holding that the medical costs assessment is a fine); *People v. Jernigan*, 2014 IL App (4th) 130524 (holding that the anti-crime fund and Violent Crime Victims Assistance Act (725 ILCS 240/1 *et seq.* (West 2008)) assessments are fines). This court has found that, regardless of the terms used by the legislature, when determining whether a charge is a fine or a fee, the attributes of the charge are most important, *i.e.*, if it is intended to reimburse the state for some cost incurred in defendant's prosecution. *Jones*, 223 Ill. 2d at 599-600; *Graves*, 235 Ill. 2d at 250-51.

¶ 45 Given the complex history of the legislature mislabeling fines and fees, treating fines differently than fees for purposes of determining the court's power to correct an unauthorized assessment would clearly yield results that are absurd, inequitable, and unjust. If the clerk labels an assessment a fine but in reality it is a fee, under a narrow reading of the Clerks of Courts Act, it would not be incorporated into the record on appeal, and defendant gets no relief from the improperly assessed fee. Had it been properly labeled a fee, defendant would get relief. On the other hand, if the clerk labels an assessment a fee but in reality it is a fine, that "fee" would be incorporated into the judgment pursuant to the Clerks of Courts Act, and accordingly, a defendant gets relief, even though it is actually a fine not encompassed by a narrow reading of the Clerks of Courts Act. The aforementioned flaws with the legislature's labeling of fines and fees, which the majority fails to address, make it completely illogical to read this Act as excluding "fines" assessed by the clerk from being incorporated into the record and judgment.

¶ 46 The majority has also deliberately chosen not to recognize an essential component of this case, namely that not all of defendant's assessments are labeled as fines by the legislature. The "Court" assessment, which was required by a county ordinance, is labeled as a fee. 55 ILCS 5/5-1101(c)(1) (West 2014). The "Youth Diversion" assessment, also required by a county ordinance, is labeled by that ordinance as a fee. 55 ILCS 5/5-1101(e)(2) (West 2014). Two of

the assessments are not clearly labeled as either fines or fees. The "Medical Costs" assessment is referred to as a "reimbursement" by the legislature (730 ILCS 125/17 (West 2014)), while the "State Police Ops" assessment was discussed in the statute as "compensation" (705 ILCS 105/27.3a (West 2014)). The remaining assessments are labeled as fines by the legislature. 725 ILCS 240/10(b)(1) (West 2014); 730 ILCS 5/5-9-1(c) (West 2014); 730 ILCS 5/5-9-1.7(b)(1) (West 2014). Thus, under the majority's analysis, the appellate court would have jurisdiction over the assessments labeled "fees" by the legislature. However, the majority, inconsistent with its own analysis, finds the appellate court lacked jurisdiction to address any of these assessments, even the ones labeled "fees" by the legislature.

¶ 47    Illinois courts do not always agree with the legislature's labeling of assessments as fines or fees; thus, judicial review is necessary in cases like defendant's where the assessments authorized by statute are not labeled as fines. If this court, and for that matter the appellate court, did not review cases such as this, there would be no judicial determination as to the category of the assessment being imposed against defendant. "Over the years, more and more costs have been passed on to court patrons through an elaborate web of fees and fines that are next to impossible to decipher and severely lacking in uniformity and transparency." Statutory Court Fee Task Force, *supra* introduction, at 7.

¶ 48    If our task force finds these fees nearly impossible to decipher, there is no logic in prohibiting our courts on direct appeal from correcting these confusing and illegal assessments. This problem will only continue to spiral out of control as a result of the majority's holding. In cases like defendant's, where the assessments have been labeled by the legislature as a mixture of fines and fees, the majority's holding would, at most, only allow us to correct some of the illegally imposed assessments. If the case is already properly before this court, it seems to do so would be an undeniable burden on not only defendants, who would have to file a writ of *mandamus* to handle the other assessments, but also on our judicial system, which would have to expend the resources to hear the same case again. Unfortunately, those wasted resources could be used to procure a determination the court should have made in the first place.

¶ 49    Clearly, defendant's notice of appeal indicated the judgment and sentence from which he was appealing and gave the appellate court jurisdiction to resolve the issue of fines illegally imposed by the clerk. See Ill. S. Ct. R. 366 (eff. Feb. 1, 1994) (granting the same powers of amendment held by the trial court to courts of review). To reach any other conclusion would result in an undue burden on defendants, an affront to the administration of justice, and a conflict with judicial economy. This case, like others, highlights the convoluted system of fines and fees for criminal defendants and their often futile quest to have errors corrected. The majority's analysis lacks sufficient justification and explanation to undercut the power and long-standing authority we have given to the appellate court to correct mistakes, such as these illegal assessments, and does so at the expense of defendants faced with an elaborate maze of all too often void fines and fees. In *People v. Caballes*, 221 Ill. 2d 282, 313 (2006), this court stated that "it is more important that the applicable rule of law be settled than it be settled right." (Internal quotation marks omitted.) Unfortunately for the majority, and Illinois residents, the majority's disposition is neither right, nor will it leave the law settled. Therefore, I join Justice Thomas's dissent.

¶ 50        JUSTICE THOMAS joins in this dissent.

¶ 51        JUSTICE THOMAS, dissenting:

¶ 52        For over three decades, the Illinois courts have been dealing with the problem of circuit clerks improperly imposing fines or fees that are required to be imposed by the judiciary. See, *e.g.*, *People v. Tarbill*, 142 Ill. App. 3d 1060, 1061 (1986). The problem continues to this day, with no sign of abating. See, *e.g.*, *People v. Matthews*, 2017 IL App (4th) 150911, ¶¶ 46-48 (vacating various fines imposed by the circuit clerk because such fines are "void from their inception" (internal quotation marks omitted)). For decades, it was common practice for the State to confess error in these cases, and no one seriously questioned the proposition that a reviewing court that has obtained jurisdiction over a criminal case through a timely filed notice of appeal could vacate fines illegally assessed by a circuit clerk.

¶ 53        Things changed in *People v. Gutierrez*, 2012 IL 111590, when the State argued that reviewing courts lack jurisdiction to vacate illegal assessments by circuit clerks. This court rejected the State's argument unanimously and explained that, when the clerk assesses a fine or fee required to be imposed by the judiciary, the assessment is void. *Id.* ¶ 14. Therefore, a reviewing court having jurisdiction over the case may vacate the void assessment. *Id.* Today, this court is presented with the exact same jurisdictional arguments that it rejected in *Gutierrez*. Rather than follow *stare decisis*, however, this court overrules *Gutierrez* without even mentioning *stare decisis* principles. The court announces today that reviewing courts may wash their hands of this entire matter and that defendants who are unhappy with circuit clerks imposing illegal fines upon them will have to sue the circuit clerk. *Supra* ¶ 31. Defendants will have to bring entirely separate *mandamus* suits to have these fines vacated, and they will have no constitutional right to counsel in such proceedings. See *Doherty v. Caisley*, 104 Ill. 2d 72, 76 (1984). This is precisely the type of burden *Gutierrez* said it would *not* impose upon defendants. *Gutierrez*, 2012 IL 111590, ¶ 14 n.1. The majority misunderstands the relationship between courts and circuit clerks, and this has led it to issue an opinion that is both wrong as a matter of court power and unconscionable as a matter of policy.

¶ 54                    I. The Circuit Clerk Assessed Fines Against Defendant

¶ 55        Before examining why the majority's jurisdictional analysis is wrong, we need to be clear about what happened in this case. The circuit clerk improperly assessed several fines against defendant. As the majority notes, a fine is considered part of a defendant's sentence, and therefore only a judge may impose a fine. *Supra* ¶ 14. Thus, when reviewing courts are faced with fines imposed by the circuit clerk, the approach has always been to recognize that such fines are void and to vacate them. See, *e.g.*, *Matthews*, 2017 IL App (4th) 150911, ¶¶ 46-48.

¶ 56        In this case, the State makes a new question-begging argument that the majority finds compelling. The State contends that, because clerks are not authorized to impose fines, the clerk in this case did not impose the fines. The State explains that this case merely involves erroneous *references* to fines. The State claims that we are dealing with data entries in the clerk's accounts receivable records that reference certain fines. However, according to the State, these fines were neither assessed nor imposed because the clerk lacks the authority to impose fines. Instead, this case merely involves mistakes that a clerical employee made when listing the fines imposed by the court.

¶ 57    The majority apparently does not fully agree with the State's characterization of the clerk's actions and is at least willing to acknowledge that something of consequence happened. The majority acknowledges that the fines at issue were "charged to defendant." *Supra* ¶ 5. Moreover, the majority states that "the clerk's action was *improper*" and refers to the fines as "unauthorized fines." (Emphasis added.) *Supra* ¶ 23. The majority also suggests that defendant bring a *mandamus* action against the circuit clerk. *Supra* ¶ 31. A *mandamus* action would be unnecessary if the clerk did not do anything of any concern to defendant. However, in perhaps trying to meet the State halfway, the majority claims that what happened here was "the erroneous recording of the circuit court's judgment." *Supra* ¶ 30. According to the majority, because courts impose judgments and clerks record them, this case cannot involve anything other than the erroneous recording of a judgment. Thus, "[b]ecause the circuit clerk had no authority to levy any fines against defendant, *the recording of the additional fines was invalid and unenforceable*." (Emphasis added.) *Supra* ¶ 23. It is not clear how the *recording* of a fine can be unenforceable; clearly it is the illegal fine itself that is unenforceable.

¶ 58    What is happening in these cases is that the circuit clerk is imposing fines that it is not authorized to impose. An important part of the clerk's job is assessing fees and costs. What the payment status information sheet shows is that, when the clerk assessed fees it *was* authorized to assess, it also assessed certain fines that it was *not* authorized to assess. As the appellate court noted in *People v. Warren,* "We recognize it is the long-standing practice of the circuit court clerks to impose the fees and costs associated with criminal cases, but this does not excuse the similar treatment of fines, which are a component of the sentence to be imposed by the sentencing judge." 2014 IL App (4th) 120721, ¶ 171, *vacated on other grounds*, No. 118322 (Ill. Jan. 20, 2016) (supervisory order). How do we know that the clerk assessed the fines? Because they are in the circuit clerk's accounts receivable despite the court not having imposed them. See, *e.g.*, *People v. Larue*, 2014 IL App (4th) 120595, ¶ 56 ("A computer printout, however, reveals that for each of defendant's two convictions, the circuit clerk imposed the following assessments, which constitute fines ***."). The effect of the court imposing the fines would be that they would be entered into the clerk's accounts receivable as a debt owed by defendant. That is exactly what happened here, despite the fact that the court did not assess the fines. It defies reason to argue that these are simply clerical errors and that an employee of the clerk's office simply recorded the court's judgment incorrectly. That would require us to believe that, when attempting to enter into the accounts receivable the fines that the court had imposed, the employee accidentally listed several fines that the court did not impose and these just happened to be the very fines that were mandatory in defendant's case. It would be remarkable for that to happen even once, and it is absurd to claim that this is a systemic problem that has been occurring for decades. Clearly what is happening in these cases is that the clerk knows that the fines are mandatory and thus assesses them along with the fees that it assesses against defendants. Such fines do not end up in the clerk's accounts receivable because employees do not know how to copy judgments correctly; they end up there because clerks believe they have the authority to assess mandatory fines against defendants.

¶ 59    The State's contention that someone could not have done something because they were not authorized to do it should be rejected out of hand. One suspects that the State would not be too receptive to an argument from a criminal defendant that he could not have committed a certain act because it was against the law. Could a drug dealer successfully claim that he was not selling OxyContin because he is not a pharmacist? Is it a defense to a claim that someone is

- 14 -

committing the unauthorized practice of law that he could not have been practicing law because he is not an attorney? Or take the case before us. The State argues that the appellate court did not have jurisdiction in this case because the court has jurisdiction to review only final orders of the circuit court. The State contends that the appellate court has no jurisdiction over actions of the circuit clerk that are not embodied in a court order. If the State's authority argument is correct, that means that the appellate court did not actually vacate the fines because it had no authority to do so. Thus, we should simply dismiss the State's petition for leave to appeal as improvidently granted. But that is not the relief that the State wants; the State wants the appellate court opinion vacated because it believes that the court acted beyond its authority. Similarly, defendant wants the fines assessed by the clerk vacated because the clerk acted beyond its authority. It is simply nonsensical to argue that someone did not do something because that person was not authorized to do it. What happened here is the same thing that has been happening for decades. When the clerk assessed fees it *was* allowed to assess, it also assessed certain fines that it was *not* authorized to assess. Therefore, those assessments are void and may be vacated by a court having jurisdiction over the case. Since at least 1864, this court has recognized that when a clerk performs an act that is required to be performed by a judge, that act is "unauthorized and void." *Hall v. Marks*, 34 Ill. 358, 363 (1864). Today, the majority instead holds that when a clerk performs an act that is required to be performed by a judge, the clerk did not perform the act.

¶ 60     It should be noted that the majority's holding will apply not only to issues involving fines that the clerk is not allowed to assess but also to fees that the clerk *is* allowed to assess. *People v. Smith*, 2014 IL App (4th) 121118, shows the types of issues that can arise with respect to fees that the clerk is empowered to assess. In *Smith*, the defendant supplemented the record with a clerk's fines and information sheet that listed several assessments that the clerk had issued after sentencing. *Id.* ¶ 10. The defendant challenged several of the fees on the basis that only one such fee was allowed per case but the clerk had imposed them on each count. The appellate court agreed with the defendant that the clerk had improperly assessed duplicate automation fees, circuit-clerk fees, court-security fees, and document storage fees. Thus, the court vacated all of the duplicate fees. *Id.* ¶¶ 23-31. Presumably, this will no longer be allowed under the majority opinion. While the clerk had the authority to assess these fees, it erroneously assessed multiple ones where only one was allowed. However, the duplicate fees were brought to the court's attention by way of a "circuit clerk's fees and fines information" that was filed as a supplemental record. *Id.* ¶ 10. As these fees were not listed in the circuit court's final judgment, presumably the majority would hold that the appellate court lacked jurisdiction to vacate the duplicate fees. The appellate court is also frequently called upon to resolve issues involving whether certain assessments should be considered fees or fines. Many of these cases will now be off the table as well. Moreover, what will become of the assessments in cases in which a defendant has his or her conviction reversed or vacated? Will the assessments remain on the books unless a defendant brings a separate *mandamus* action to have them vacated?

¶ 61                    II. The Appellate Court Had Jurisdiction Over the Entire Case

¶ 62     The State argues that defendant could not appeal from the clerk's payment status information. Defendant did not purport to do so. Rather, he timely filed a notice of appeal from the final judgment in his criminal case. When a defendant timely files a notice of appeal in a

- 15 -

criminal case, it brings up his entire conviction and sentence for review. *People v. Lewis*, 234 Ill. 2d 32, 38-39 (2009). Thus, the question is not whether a criminal defendant may appeal from a payment status information; the question is whether a reviewing court that has obtained jurisdiction over a criminal case by means of a timely filed notice of appeal may vacate illegal fines that were assessed by the circuit clerk in the case under review.

¶ 63　　　　The answer is unquestionably yes, because the clerk's assessments are considered part of the record and judgment. Although not raised by either party in *Gutierrez* or the present case, section 16 of the Clerks of Courts Act requires the circuit clerk to maintain a fee book in which fees and costs are recorded, and that section provides that the fee book "*shall be considered a part of the record and judgment*, subject, however, at all times to be corrected by the court." (Emphasis added). 705 ILCS 105/16(5) (West 2016). So the majority's entire reason for finding no jurisdiction is simply wrong. Section 16(5) makes clear that the assessments that the clerk makes at the end of a case are considered part of the record and judgment. Here, the clerk assessed the fines along with the fees and costs it was allowed to assess, and therefore section 16(5) makes them part of the record and judgment. Section 16(5) also shows that the majority is wrong when it states that the appellate court erred in allowing defendant to supplement the record with the payment status information. *Supra* ¶ 22. Because the circuit clerk's assessments are considered part of the record and judgment, the appellate court obviously did not err in allowing defendant to provide a record of the assessments. The majority's assertion that the clerk's assessments in defendant's case are "extraneous materials" (*supra* ¶ 22) is manifestly incorrect. The clerk's assessments are incorporated into the record by statute, and thus they clearly fall within the purview of Rule 329. Ill. S. Ct. R. 329 (eff. Jan. 1, 2006).

¶ 64　　　　The majority contends that section 16(5) has "no purchase within the context of this case" (*supra* ¶ 26) because it does not mention fines. But section 16(5) does not mention fines because circuit clerks are not entitled to impose fines. The legislature is not going to enact a statute requiring the clerk to maintain a book in which it assesses fees, costs, and illegal fines. If the fee book is made part of the record and judgment, then *whatever is recorded therein* is part of the record and judgment. So, in sum, the majority's position is this: (1) the circuit clerk is not authorized to assess fines, and (2) the court will not enforce the statute making the clerk's assessments part of the record and judgment because the statute does not list fines among the assessments the clerk should enter. How does one respond to an argument like this?

¶ 65　　　　Moreover, as the majority well knows, it is not always clear what is a fee and what is a fine, and reviewing courts spend a significant amount of time resolving these issues. The point is that the statute provides that the assessments that the clerk makes at the end of the case are treated as part of the record and judgment. Here, the clerk imposed the illegal fines along with the fees and costs it was entitled to impose. It cannot be the case that their very illegality is what puts them beyond the reach of the court. If the majority's reading of the statute is correct, that would mean that a reviewing court could properly have before it an issue involving a fee assessed by the circuit clerk. However, if the court later concludes that what was labeled a fee is actually a fine, it would then have to conclude that the assessment was no longer part of the record and dismiss the appeal for lack of jurisdiction. The majority cannot possibly believe this.

¶ 66　　　　The majority also claims that interpreting the statute as meaning what it says would defeat the very crux of defendant's argument, which is that the fines were invalid because they were

not part of the court's final judgment. *Supra* ¶ 27. To be clear, defendant's argument is that the fines are invalid because they were *imposed by the circuit clerk*. Nothing in section 16(5) means that fines do not have to be imposed by the circuit court. Section 16(5) simply recognizes that there are certain assessments that Illinois law allows the clerk to make and these are effectively appended to the court's judgment. The statute does *not* allow the clerk to usurp the trial court's function and impose assessments that are required to be imposed by the court.

¶ 67　　For the same reason, the majority is incorrect that this position is inconsistent with *Gutierrez*, a case that the majority overrules. *Supra* ¶ 28. *Gutierrez* held that the public defender fee was void because it was imposed by the circuit clerk and not by the circuit court. *Gutierrez*, 2012 IL 111590, ¶ 14. The effect of section 16(5) is to statutorily append the clerk's assessments to the judgment and also to make them part of the record. It in no way means that these assessments were *imposed by the circuit court*, and it does not allow the clerk to perform a judicial function.

¶ 68　　But let us assume that the majority is correct that we may not read the statute as allowing the fee book to become part of the judgment because that would amount to a grant of judicial power to circuit clerks. *Supra* ¶ 27. Out of an abundance of caution, we can read the words "and judgment" completely out of the statute. If we do so, section 16(5) still provides that the clerk's assessments are considered part of the record. The majority does *not* contest the legislature's authority to make the assessments part of the record. Thus, regardless of whether the assessments are considered part of the judgment, they are considered part of the *record* and therefore are properly before the reviewing court. That is really the end of the ball game for the majority's argument. And a reviewing court's power in a criminal case is not limited to acting on the judgment before it. Rather, it may "set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken." Ill. S. Ct. R. 615(b)(2).

¶ 69　　The legislature's obvious intent in this part of section 16(5) is to ensure that the clerk's assessments pursuant to a judgment of conviction and sentence are considered part of a defendant's case. Again, this is something that is just obvious even without the statute and was virtually universally understood until today. The clerk's assessments are properly considered part of the record before the reviewing court, and a reviewing court having jurisdiction over the case has the authority to act on them.

¶ 70　　　　　　　　　　　　　　　　　III. *Gutierrez*

¶ 71　　Even if section 16(5) did not exist, the majority would still be wrong for the reasons explained by this court in *Gutierrez*. *Gutierrez* provides an independent rationale for a reviewing court's authority to vacate unauthorized assessments by the circuit clerk. In *Gutierrez*, a unanimous court addressed and rejected the same arguments that the State makes in this case. *Gutierrez* involved a circuit clerk's imposition of a public defender fee that was required to be imposed by the court. The State argued that the appellate court was without jurisdiction to vacate the fee for two reasons: (1) because the assessment was made by the clerk, it was not embodied in a circuit court order, and (2) defendant's notice of appeal did not indicate that he was appealing any fines or fees. *Gutierrez*, 2012 IL 111590, ¶ 7. These are the same arguments that the State makes in the present case. *Gutierrez* rejected both of these

arguments and held that a defendant's notice of appeal that does not indicate that he is appealing anything other than his conviction properly brings up his entire conviction and sentence for review. *Id.* ¶ 12. If the clerk has assessed a fine or fee that was required to be imposed by the judiciary, the fine or fee is void and may be vacated by a court having jurisdiction over the case. *Id.* ¶ 14.

¶ 72     The majority overrules *Gutierrez* without even mentioning *stare decisis* principles. Presumably, the majority believes that if you do not use the word "overruled" a discussion of *stare decisis* is unnecessary. When a court holds in one case the exact opposite of what it held in a previous case, it has overruled the case whether or not it uses the word "overruled." Thus, *stare decisis* is implicated here.

¶ 73     The doctrine of *stare decisis* expresses the policy of courts to stand by precedent and to avoid disturbing settled points. *People v. Sharpe*, 216 Ill. 2d 481, 519 (2005). It is the means by which courts ensure that the law will not merely change erratically but will develop in a principled and intelligible fashion. *Chicago Bar Ass'n v. Illinois State Board of Elections*, 161 Ill. 2d 502, 510 (1994). " '[A] question once deliberately examined and decided should be considered as settled and closed to further argument ***.' " *Wakulich v. Mraz*, 203 Ill. 2d 223, 230 (2003) (quoting *Prall v. Burckhartt*, 299 Ill. 19, 41 (1921)). Any departure from *stare decisis* must be specially justified. *Tuite v. Corbitt*, 224 Ill. 2d 490, 505 (2006). A court will *not* depart from *stare decisis* merely because it would have decided otherwise if the question were a new one. *People v. Colon*, 225 Ill. 2d 125, 146 (2007). Thus, prior decisions will not be overruled absent good cause or compelling reasons to do so. *Id.*

¶ 74     Although the majority does not discuss *stare decisis*, we can infer from its analysis what it believes the "good cause" would be to overrule *Gutierrez*. The majority claims that "the legal landscape has changed dramatically since *Gutierrez* was decided" (*supra* ¶ 25) and argues that *Gutierrez* was undermined by two subsequent decisions of this court, *People v. Castleberry*, 2015 IL 116916, and *People v. Hardman*, 2017 IL 121453. Unfortunately for the majority, these cases have absolutely no bearing on *Gutierrez*'s jurisdictional analysis.

¶ 75     The majority claims that *Gutierrez* was "premised" on the void sentence rule and therefore *Castleberry*'s abolition of the void sentence rule undermined *Gutierrez*'s jurisdictional analysis. *Supra* ¶ 24. In truth, *Gutierrez* had nothing at all to do with the void sentence rule, and therefore *Castleberry* is not relevant to *Gutierrez*'s jurisdictional analysis. *Gutierrez* clearly stated that it agreed with the defendant that the assessment was void because the "*circuit clerk acted beyond its authority in imposing*" it. (Emphasis added.) *Gutierrez*, 2012 IL 111590, ¶ 14. The majority concedes this very point when it states that the voidness of the clerk's action in *Gutierrez* was "*based on the fact that the clerk lacked authority to impose such a fee.*" (Emphasis added.) *Supra* ¶ 28. The void sentence rule held that a judicial sentence that does not conform with statutory requirements is void. *Castleberry*, 2015 IL 116916, ¶ 1. As this court explained in *People v. Price*, 2016 IL 118613, ¶ 31, the *only* type of voidness affected by *Castleberry* is where a trial court's judgment of sentence does not conform to a statutory requirement. Given that the majority insists that the clerk's assessments were *not* part of the trial court's judgment of sentence, it is not clear how the majority can believe that *Castleberry* is relevant to this situation. I invite the majority to cite the portions of *Price* and *Castleberry* that discuss unauthorized assessments by circuit clerks. Here, the fines assessed by the clerk are void because the clerk attempted to exercise a power reserved to the judiciary. *This has*

*nothing to do with the void sentence rule*. As the appellate court correctly stated in *People v. Hible*, 2016 IL App (4th) 131096, ¶ 11, "*Castleberry* does not change the outcome here. Fines imposed by the circuit clerk are still void." *Hible* correctly recognized that clerk-imposed fines are void *not* because of the void sentence rule but because the clerk is attempting to perform a judicial function. *Id.* ¶¶ 11-12; see also *People v. Wade*, 2016 IL App (3d) 150417, ¶ 12 ("The fines in this case were void, not because they failed to conform with statutory requirements, but because they were imposed not by the trial court, but by the circuit clerk. *Castleberry*'s abolition of the void sentence rule, therefore, is of no consequence to the issue of whether the fines are void."); *People v. Warren*, 2017 IL App (3d) 150085, ¶ 35 (McDade, J., dissenting) ("there is not an open question as to whether clerk-imposed fines are void. *Castleberry* abolished the void sentence rule; it did not call on courts to reconsider the very concept of voidness."), *vacated*, No. 122639 (Ill. Nov. 22, 2017) (supervisory order).

¶ 76    The appellate court has correctly recognized in multiple cases that *Castleberry* has no bearing at all on whether clerk-imposed fines are void. How, then, did a majority of this court conclude that *Gutierrez* was based on the void sentence rule when it so clearly was not? The majority claims that *Gutierrez* was premised on the void sentence rule because it cited *People v. Thompson*, 209 Ill. 2d 19, 25 (2004). *Supra* ¶ 24. The State makes the same erroneous argument in its brief. *Gutierrez*, however, cited *Thompson only* for the boilerplate proposition that "a void order may be attacked at any time or in any court, either directly or collaterally." See *Gutierrez*, 2012 IL 111590, ¶ 14. It is not clear where the majority got the idea that every case cited for a boilerplate legal proposition must necessarily involve the same issue as the case under consideration. To demonstrate the obvious falsity of such a claim, we merely need to look at *Thompson*. *Thompson* involved the void sentence rule, but it cited *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103 (2002), for the boilerplate proposition that a void order may be attacked at any time or in any court. *Thompson*, 209 Ill. 2d at 25. *Sarkissian* involved a civil default judgment that was alleged to be void because of defective service of process. *Sarkissian*, 201 Ill. 2d at 96. Would anyone ever claim that *Thompson* was "premised" on the rule that a default judgment is void when service of process is defective? Of course not, but that is *precisely* what the majority is doing here when it claims that *Gutierrez* was premised on the void sentence rule. It is telling that, had *Gutierrez* simply cited *Sarkissian* instead of *Thompson*, the majority's entire analysis would fall apart.

¶ 77    It is worth noting, too, that this court has already indicated what it viewed of the argument that *Castleberry* undermined *Gutierrez*. In *Warren*, 2017 IL App (3d) 150085, a panel of the Appellate Court, Third District, announced that it was no longer going to follow *Gutierrez*. The court set forth the same jurisdictional analysis adopted by the majority today (*id.* ¶¶ 21-22) and contended that *Gutierrez* had been undermined by *Castleberry* (*id.* ¶ 20). The defendant petitioned this court for leave to appeal. Now, one would think that if a majority of this court found these arguments compelling, the court would have allowed the petition for leave to appeal so that it could address them. Instead, the court vacated the appellate court opinion in a supervisory order and ordered it to address the defendant's arguments on the merits. *People v. Warren*, No. 122639 (Ill. Nov. 22, 2017) (supervisory order). Of course, supervisory orders are not relevant for purposes of *stare decisis*, but the order clearly shows an inconsistency in this court's thinking over whether *Castleberry* undermined *Gutierrez*. At a minimum, the majority should explain what principles of appellate jurisdiction have changed since November.

¶ 78    As bad as the majority's reliance on *Castleberry* is, its reliance on *Hardman* is worse. The majority has to know that *Hardman* has nothing at all to do with *Gutierrez*'s jurisdictional analysis. The majority notes that *Hardman* "discussed" *Gutierrez* and references paragraph 55 of *Hardman* (*Hardman*, 2017 IL 121453, ¶ 55). *Supra* ¶ 25. In this paragraph, the *Hardman* court was not discussing *Gutierrez*'s jurisdictional analysis. Rather, it involved the *second* issue in *Gutierrez*, which was whether the cause should have been remanded for the imposition of a public defender fee. See *Hardman*, 2017 IL 121453, ¶ 55. In *Gutierrez*, the court elected not to remand because the fee had been imposed by the circuit clerk, and neither the State nor the circuit court was seeking a public defender fee. *Gutierrez*, 2012 IL 111590, ¶ 24. In *Hardman*, by contrast, the circuit court *was* seeking to impose a public defender fee, but it had not held the necessary hearing beforehand. *Hardman*, 2017 IL 121453, ¶ 48. Thus, *Gutierrez* was distinguished on the basis that the record in that case "did not indicate that the circuit court was considering ordering the imposition of a public defender reimbursement fee" and " 'the statute clearly does not contemplate the State asking for a public defender fee for the first time when the case is on appeal.' " *Id.* (quoting *Gutierrez*, 2012 IL 111590, ¶ 23).

¶ 79    How, then, does the majority make *Hardman* relevant to this case? The majority focuses on the following sentence: "And because there was no circuit court order for reimbursement of a public defender fee, the appellate court could not remand for a hearing on an order that did not exist." *Id.* According to the majority, when *Hardman* used this line, it was recognizing "the fundamental distinction between a court order and the ministerial action of a circuit clerk." *Supra* ¶ 25. Again, as explained above, the relevant sentence from *Hardman* means nothing more than that the court was seeking the fee in one case and not in the other. What the majority appears to be doing here is attempting to validate the State's preoccupation with one particular line in *Gutierrez*, when the court said an appellate court having jurisdiction over a criminal case had jurisdiction to act on "void orders of the circuit clerk." *Gutierrez*, 2012 IL 111590, ¶ 14. The State contends that clerks do not enter orders, and the majority is now implying that our intent in *Hardman* when we wrote the above sentence about "an order that did not exist" was to repudiate *Gutierrez*.

¶ 80    What *Hardman* was referring to was a *court order*. Whether or not a *court order* exists is of crucial importance on the question of whether a case may be remanded for imposition of a public defender fee, because such a remand is appropriate only if the court or the State is seeking such a fee. Again, the sentence in *Hardman* reads, "And because *there was no circuit court order* for reimbursement of a public defender fee, the appellate court could not remand for a hearing on an order that did not exist." (Emphasis added.) *Hardman*, 2017 IL 121453, ¶ 55. Because there was no *circuit court order* imposing a public defender fee in *Gutierrez*, a remand was not appropriate. The fact that there was no *circuit court order* was fully acknowledged in *Gutierrez* and was the very basis for its holding. But, according to the majority, *Hardman* undermined *Gutierrez* simply by repeating exactly what *Gutierrez* said.

¶ 81    When *Gutierrez* used the phrase "void orders of the circuit clerk," of course it was not saying that circuit clerks could enter *court orders*. *Gutierrez*, 2012 IL 111590, ¶ 14. The word "order" can mean either (1) "[a] command, direction, or instruction" or (2) "[a] written direction or command delivered by a court or judge." Black's Law Dictionary 1206 (9th ed.

2009). Clearly, *Gutierrez* was using the word in its former sense.[3] See also, *e.g.*, *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 68 ("we direct the clerk of the circuit court to correct the fines and fees order to reflect that defendant's presentence custody credit satisfies his $30 Children's Advocacy Center fine"). Are five members of this court really claiming that six years ago they believed that circuit clerks could issue court orders? If there is any doubt at all that *Gutierrez* was using the term in its former sense, one merely needs to read the parenthetical to the citation that follows the disputed sentence, which reads, "*just as a void order may be attacked at any time*, [the] appellate court could address [a] forfeited argument that [the] circuit clerk acted beyond its authority in imposing a fine." (Emphasis added.) *Gutierrez*, 2012 IL 111590, ¶ 14. Thus, the disputed paragraph in *Gutierrez* is simply saying that courts may act on void assessments of the circuit clerk under the same principles that allow them to act on void court orders. In hindsight, it probably would have been preferable for *Gutierrez* to use the phrase "void assessments of the circuit clerk" or "void actions of the circuit clerk," but no one could have foreseen the misrepresentations that would be made about the court's holding. Regardless of the term used, however, *Gutierrez*'s holding remains entirely valid. Once one concedes the obvious point that *Gutierrez* was not saying that circuit clerks could issue court orders, one also has to concede that *Hardman* is not even remotely relevant to *Gutierrez*'s jurisdictional analysis.

¶ 82    Neither *Castleberry* nor *Hardman* has the slightest application here, and thus the majority has not demonstrated good cause to depart from *stare decisis*. Not only has the legal landscape not "changed dramatically" (*supra* ¶ 25) with regard to *Gutierrez*'s jurisdictional analysis, it has not changed *at all*. Rather, the court has simply changed its mind and is now accepting arguments that it previously rejected. In his passionate defense of *stare decisis* principles in his dissent in *People v. Mitchell*, 189 Ill. 2d 312, 399 (2000) (Freeman, J., dissenting, joined by Harrison, C.J., and McMorrow, J.), Justice Freeman stated, "If this court can so cavalierly disregard its own precedent, we surely cannot expect others to follow it nor can we justly criticize those who do not. Today's imprudent action invites nothing but open defiance of our precedent and seriously undermines this court's legitimacy." The Third District's opinion in *Warren* shows that Justice Freeman's fears were not unfounded. The State apparently felt free to raise in the appellate court arguments that this court had already rejected, and the majority in that case stated that it would no longer follow *Gutierrez* absent further guidance from this court. *Warren*, 2017 IL App (3d) 150085, ¶¶ 19-20. *Warren*'s defiance forced the dissenting justice in that case to point out that "*Gutierrez* is substantively identical to the present case. While the majority may disagree with the result in that case, or wish to see it revisited, this court is nevertheless legally obligated to follow that precedent and conclude that defendant may challenge the present assessments." *Id.* ¶ 46 (McDade, J., dissenting). With the court today showing that it does not care if we unanimously put this issue to rest six years ago and

---

[3]The State claims that even this usage of the term is incorrect because the entry of the disputed fines into the clerk's accounts receivable did not purport to direct, command, or instruct anyone to do anything. As explained in detail above, an important part of the clerk's job is to assess fees and costs, and the clerk assessed these fines in the same way that it assesses things that it *is* allowed to assess. An assessment is the "*imposition of something*, such as a tax or fine, according to an established rate" (emphasis added) (Black's Law Dictionary 133 (9th ed. 2009)), and the majority concedes that the fines were "charged to defendant" (*supra* ¶ 5).

showed our continued adherence to our position just six months ago, the open defiance that Justice Freeman feared will surely only get worse.

¶ 83     IV. Courts Have Inherent Authority to Correct Mistakes of the Circuit Clerk

¶ 84     Let us now assume for the sake of argument that everything that the State claims is true. In other words, the circuit clerk did not assess any fines against defendant, and all that happened here is that an employee incorrectly entered some data into the clerk's accounts receivable. Or, as the majority put it, the clerk's action was "not the entry of a judgment but was, instead, the erroneous recording of the circuit court's judgment." *Supra* ¶ 30. Even if we fully concede these points, the appellate court *still* had the authority to correct the clerk's errors. It is a well-established legal principle that the courts have broad authority to correct the clerk's records. As this court explained in *In re Estate of Young*, 414 Ill. 525, 534 (1953), "this court has recognized the inherent power of the court to correct the clerk's records so that they correctly reflect the actual judgment rendered by the court, when the judge has a definite and certain record as a basis for the amendment." Moreover, such corrections may be made at any time. As this court explained in *People ex rel. Wonogas v. Holmes*, 312 Ill. 284, 286 (1924):

> "*Whether it is a misprision of the clerk or a malfeasance*, the court has power at all times, upon notice given, to reform its records, so as to make them speak the truth. No reason suggests itself why such amendments may not be made *at any time*, as long as anything definite and certain remains as a basis for the amendment." (Emphases added.)

See also *Moore v. Shook*, 276 Ill. 47, 53 (1916) ("The court may, even after the expiration of the term at which a judgment was rendered, correct or amend the entry thereof so as to make it conform to the judgment which the court actually rendered."); *People ex rel. Waite v. Bristow*, 391 Ill. 101, 115 (1945) ("After the expiration of the term, unless the cause is still pending and the parties are in court, [the court's] power over the record is confined to errors and mistakes of their officers ***."); *West Chicago Park Commissioners v. Boal*, 232 Ill. 248, 252 (1908) ("the defect being one which arose from a mistake of the clerk in writing the record, it could be rectified by the court at any time so as to make the record speak the truth").

¶ 85     The United States Supreme Court has also recognized this power as inherent in all courts: "The power to amend its records, *to correct mistakes of the clerk* or other officer of the court, inadvertencies of counsel, or to supply defects or omissions in the record, *even after the lapse of the term*, is inherent in courts of justice ***." (Emphases added.) *Gagnon v. United States*, 193 U.S. 451, 456 (1904). Thus, a court's power to correct mistakes of the clerk is inherent, plenary, and ongoing. And it is just obvious that this *has* to be the case because the clerk is the court's administrative arm and is thus subject to judicial control. As this court explained in *People ex rel. Pardridge v. Windes*, 275 Ill. 108, 113 (1916):

> "The position of counsel that the writing of the record is a ministerial act and that the clerk is a ministerial officer of the court is correct, but he is not independent of the court and his entry of the orders made by the court is subject to judicial control. He is not privileged to enter orders as he sees fit, contrary to the direction of the court."

See also *Moore*, 276 Ill. at 53 (" 'That which the court performs judicially or orders to be performed is not to be avoided by the action or want of action of the judges or other officers of the court in their ministerial capacity.' " (quoting 1 Abe C. Freeman, A Treatise on the Law of

Judgments § 38 (4th ed. 1892)); *Hall*, 34 Ill. at 363 (the circuit clerk is "only a ministerial officer of a court. He is only the instrument the law has designated, for convenience and the dispatch of business, to record the determination and sentence of the court.").

¶ 86    Thus, it is beyond dispute that the circuit court has the authority to correct the clerk's mistakes and may do so at any time. As noted above, the legislature has codified this principle in section 16(5) of the Clerks of Courts Act, which provides that the clerk's fee book is "subject *** at all times to be corrected by the court." 705 ILCS 105/16(5) (West 2016). And if the circuit court has that authority, then the appellate court has that authority while it has jurisdiction over the case. Illinois Supreme Court Rule 366(a)(1)[4] provides that a reviewing court may "exercise all or any of the powers of amendment of the trial court," Rule 366(a)(3) provides that a reviewing court may "*order or permit the record to be amended by correcting errors* or by adding matters that should have been included," and Rule 366(a)(5) provides that a reviewing court may "enter any judgment and *make any order that ought to have been given or made*, and make any other and further orders and *grant any relief*, including a remandment, a partial reversal, the order of a partial new trial, the entry of a remittitur, or the enforcement of a judgment, *that the case may require*." (Emphases added.) Ill. S. Ct. R. 366(a) (eff. Feb. 1, 1994); see also *Gegenhuber v. Hystopolis Production, Inc.*, 277 Ill. App. 3d 429, 432 (1995) (citing Rule 366(a)(3) and holding "[a]s a reviewing court, we have the power to correct clerical errors"). It is difficult to conceive of a broader grant of power to a reviewing court than the power to grant any relief that the case may require. Thus, an appellate court that has jurisdiction over a criminal case in which fines have been incorrectly recorded by the clerk not only has the power to correct the mistake; the appellate court *should* do so in the interest of judicial economy. This used to mean adding a few sentences to an appellate court opinion. Going forward, striking these fines will require another round of litigation.

¶ 87    The State undoubtedly recognizes that, if the trial court has the power to vacate the fines, then an appellate court having jurisdiction over the case also has the power to vacate the fines. In *Gutierrez*, the State argued that the appropriate remedy for a defendant subjected to an illegal assessment by the clerk is to file a motion in the trial court to have the assessment vacated. In this case, the State has abandoned that position and argues that a defendant's only remedy in this situation is to contact the clerk's office and request that its records be corrected.[5] The State undoubtedly realized that it had painted itself into a corner by conceding the trial

---

[4]In *People v. Enoch*, 122 Ill. 2d 176, 188-90 (1988), this court explained that, while not all of Rule 366 is applicable to criminal appeals, it had applied subsection (a) to criminal appeals and this subsection is considered similar to Illinois Supreme Court Rule 615(b).

[5]The majority agrees with the State that defendants should try to work out these problems with the clerk. *Supra* ¶ 31. It is difficult to see how the State and the majority can make this argument with a straight face. This court and the appellate court have been telling circuit clerks for decades that they cannot impose fines and have gotten nowhere. But the State and the majority believe that a circuit clerk will be completely open to a criminal defendant's claim that the clerk doesn't know how to do his or her job. Presumably, the clerk's response to a defendant who complains about the assessments will be that the fines are mandatory. The clerk would not have assessed the fines if it did not believe it had the authority to do so. The almost certain result of today's opinion is that the vast majority of fines assessed by circuit clerks will simply remain in place.

court's authority to vacate the assessment because this necessarily concedes the same power to a reviewing court having jurisdiction over the case.

¶ 88 Clearly, then, the majority's focus on the fact that the assessments were not in the circuit court's final order is misplaced. Even if we ignore the effects of section 16(5) of the Clerks of Courts Act, defendant may raise this issue because it is of the type that may be raised at any time and at any stage of court proceedings. See *People v. Caballero*, 228 Ill. 2d 79, 88 (2008). Defendant's issue may be raised at any time under either of two theories: (1) the assessments were void from their inception because they were imposed by the clerk and not by the court, or (2) the court has the inherent authority to correct mistakes of the circuit clerk, and Rule 366 gives a reviewing court the same power while it has jurisdiction over the case.

¶ 89 The majority claims that we have an anomalous circumstance in which a defendant filed an appeal seeking to uphold the judgment entered by the circuit court. *Supra* ¶ 20. To be clear, defendant is not seeking to uphold the trial court's judgment; he is simply not contesting it. Rather, he is contesting the unauthorized assessments entered by the circuit clerk. This is not an "anomalous circumstance." It is merely a recognition of the principle expressed in *Caballero* that certain issues may be raised at any time. In *People v. Buffkin*, 2016 IL App (2d) 140792, the appellate court had jurisdiction over an appeal from the dismissal of the defendant's postconviction petition. The defendant in no way challenged the dismissal of that petition but rather raised two issues that were not included in the petition. First, he sought to obtain sentencing credits for which he had never previously applied. The court explained that it could reach this issue and award the credits because of this court's decision in *Caballero*. *Id.* ¶ 4. In doing so, the court in no way acted on the judgment from which the defendant appealed. Indeed, the judgment line was simply "Remanded with directions." *Id.* ¶ 16. The defendant also sought vacatur of his DNA analysis fee, but the court held that it could *not* reach that claim because *Caballero* was limited to the types of issues that could be raised at any time. *Id.* ¶ 7. Thus, because certain issues are such that they may be raised at any time and at any stage of court proceedings, there can be instances in which a defendant does not challenge the judgment appealed from but nevertheless has an issue that the appellate court may address.

¶ 90 The majority's only response to the inherent authority argument is to double down on its mistaken view of this case. The majority claims that recognition of the position I set forth here would be allowing a direct appeal from a clerical error and that this would permit the appellate court to exercise original *mandamus* jurisdiction. *Supra* ¶ 29. Nothing could be further from the truth. The court's authority to correct mistakes of the clerk is *not* limited to *mandamus* proceedings. The circuit clerk is not just any public official, and he is not independent of the court. Rather, he is "the instrument the law has designated, for convenience and the dispatch of business, to record the determination and sentence of the court" (*Hall*, 34 Ill. at 363), and he may only enter orders *subject to judicial control* (*Moore*, 276 Ill. at 53). Moreover, defendant did *not* appeal from a clerical error. Defendant appealed from the final judgment in his case, and he raised an issue that can be raised at any time. Acceptance of the position I have set forth here merely requires acceptance of three propositions, none of which the majority has contested or can contest. First, courts of justice have inherent authority to correct their records and rectify mistakes of the circuit clerk, and this power may be exercised at any time. Second, the appellate court obtained jurisdiction over this case by way of defendant's timely filed notice of appeal. Third, a reviewing court that has jurisdiction over the case may, pursuant to Rule 366(a), exercise all powers of amendment of the trial court, enter any order that ought to

have been given or made, correct errors in the record, and grant any relief that the case may require. Thus, if the circuit court can vacate the unauthorized fines at any time, the appellate court has the authority to do the same thing while it has jurisdiction over the case.

¶ 91                                    V. Conclusion

¶ 92        This court put these issues to rest six years ago in *Gutierrez*, and the majority overrules that decision without even acknowledging *stare decisis* principles. The majority's argument that *Gutierrez* was undermined by *Castleberry* and *Hardman* does not withstand a moment's scrutiny, and there is no legitimate reason not to follow our precedent.

¶ 93        It is doubtful that any court has endorsed a more enfeebled notion of appellate court power than that set forth by the majority today. The majority holds that when faced with illegal and void fines assessed by a clerical employee in the trial court's administrative arm, a reviewing court having jurisdiction over the case is powerless to act. This is directly contrary to section 16(5) of the Clerks of Courts Act, which provides that a clerk's assessments are considered part of the record. It is also contrary to longstanding authority from this court that (1) attempts by clerks to perform judicial functions are void and unenforceable and (2) the power to correct mistakes of the circuit clerk is inherent in courts of justice. Whether viewed as illegal assessments that are void or simply as clerical errors, the improperly imposed fines could be challenged at any time, and the appellate court had jurisdiction to vacate them. I therefore do not join the majority opinion.

¶ 94        CHIEF JUSTICE KARMEIER joins in this dissent.